*New-London,*
July,
1824.

Pratt
*v.*
State.

### HAYDEN *against* NOYES:

#### IN ERROR.

The jurisdiction of the town of *Lyme* extends *Westwardly* to the centre of *Connecticut* river.

To constitute a legal town-meeting for the passing of by-laws, there must have been a notification in writing, signed by the select-men, and set upon the sign-post, five days before the meeting, specifying such by-laws among the objects of the meeting; and all by-laws passed without such previous notification, are void.

Therefore, where a town-meeting was warned " to choose assessors, board of relief, select-men, and other town officers, and to do any other business then thought proper by said meeting;" and no other notification was given; it was held, that certain by-laws for the regulation of the shell fishery of the town, passed at such meeting, were void.

Though every town has the power to make by-laws to *regulate* the fishery of clams and oysters within its limits; yet a by-law of a town, *prohibiting all persons*, except its own inhabitants, from taking shell-fish in a navigable river, within the limits of such town, being in contravention of a common right, is void.

5   391
58   488
5   391
60   168

New-London,
July,
1824.

Hayden
v.
Noyes.

This was an action of debt, brought originally, by *Noyes*, before *Joseph Chadwick*, Esq. a justice of the peace for *New-London* county, to recover of the defendant, *Hayden*, the sum of five dollars, alleged to be due from him as a forfeiture for the breach of certain by-laws of the town of *Lyme*, passed on the 6th of *October*, 1823. These were set forth in the declaration, consisting of five sections. The first section prohibited the taking, by any person, of more than six bushels of oysters, within the limits of that town, in any one week. The second section appointed a committee, for the year then next ensuing, to take care of and preserve the oyster beds within the limits of the town, with power to grant license to individuals to take oysters, not exceeding in quantity six bushels. The third section prohibited the fishing for and taking of oysters, by any person, within the limits of the town, without a licence previously obtained from some one of the committee. The fourth section prohibited the fishing for and taking of oysters, within the limits of the town, by any one, who was not an inhabitant of the town.— The fifth section inflicted a forfeiture of five dollars, for the breach of any one of these by-laws, to any person who should sue for and prosecute the same to effect. The declaration averred, that " on the 13th of *October*, 1823, the defendant, not being an inhabitant of the town of *Lyme*, fished for, took and carried away ten bushels of oysters, within the limits of said town, without any license or authority of or from said committee, contrary to the form and effect of said by-laws."

The defendant pleaded, 1st, the general issue : 2ndly, That the town meeting mentioned in the declaration, at which said pretended by-laws were passed, was not legally warned or notified, for the purpose of passing such by-laws ; for that there was not any notification in writing, specifying that the objects of said meeting were to pass any votes or by-laws regulating the fishery of oysters, or any other by-laws whatsoever, signed by the select-men of *Lyme*, or a majority of them, set upon the sign-post in said town, at least five days inclusively before the day said meeting was held : 3rdly, That the taking of the oysters, by the defendant, was lawful ; for that he took them in the ship channel of the public navigable river of *Connecticut*, where the tide flows and reflows, below the flats, and below ordinary low water mark, in about fifteen or twenty feet water, about fifteen or twenty rods from the *Eastern* shore of said river, and one hundred rods from the *Western* shore thereof, in the part of said river, which lies between the towns of *Saybrook* and *Lyme*,

and which is not a part of said *Lyme*. [Here the acts of the General Assembly, and the patents, mentioned in the preceding case of *Pratt* v. *The State of Connecticut*, (ante 388.) were set forth.]

New-London,
July
1824.

Hayden
*v.*
Noyes.

On the first plea, the plaintiff joined issue. To the second, he replied, that the town-meeting mentioned in the declaration, at which said by-laws were passed, was the regular annual town-meeting of said town of *Lyme*, and was legally warned and notified for the purpose of passing said by-laws; for that there was a notification in writing, specifying, what the object of said meeting was, *viz.* to choose assessors, board of relief, select-men and other town officers, *and to do any other business then thought proper by said meeting* ; which notification was duly signed by the select-men of *Lyme*, and duly set upon the public sign-post in said *Lyme*, at least five days inclusively before the day said meeting was held. To the third plea the plaintiff replied, that the defendant took the oysters mentioned in the declaration within the limits of the town of *Lyme*, *viz.* within the waters of *Connecticut* river, more than three miles above the mouth of said river, and on the *East* side of the middle of the channel of said river, and on the *East* of the middle of said river; traversing the defendant's allegation, that the *locus in quo* lies between the towns of *Saybrook* and *Lyme*, and is not a part, or within the limits, of *Lyme*.

The defendant demurred to the plaintiff's replication to the second plea; and joined issue on the replication to the third plea.

The court adjudged the replication to the second plea sufficient, and found the issues in fact for the plaintiff; and thereupon rendered judgment for the plaintiff to recover the sum of five dollars, debt, and costs.

To obtain the reversal of this judgment, the defendant brought a writ of error in the superior court; and the questions of law arising thereon were reserved for the consideration and advice of this Court.

*Platts*, for the plaintiff in error, contended 1. That the place where the oysters were taken, was not within the limits of the town of *Lyme*. [This question, which had been argued in the preceding case, and was still under consideration, was barely stated, and submitted.]

2. That the town meeting, at which the by-laws mentioned in the declaration, were passed, was not legally warned; the ob-

*New-London,*
July,
1824.

Hayden
*v.*
Noyes.

ject of the meeting not being specified in the warning. *Stat.* 457. *tit.* 101. *s.* 2. The warning given, specified several objects particularly; but it omitted entirely that of regulating the shell-fishery. The law is a highly beneficial one; and its provisions ought to be carried into full effect; which can be done only by holding such votes and by-laws as have been passed without the notice required, to be void. The warning need not state the particular provisions—the details—of the by-laws; but it must *specify the objects;* it being, with reference to any object not specified, not a legal meeting. Nor is there any great hardship or inconvenience in this requirement. A town meeting may, at any time, be called, on the application of a certain number of inhabitants; and it will be the duty of the select-men to specify the object of such meeting in the warning.

3. That that part of the by-laws, which excluded all persons from the fishery in question, except inhabitants of *Lyme,* was void. The statute authorizes the town *to regulate* the fishery of oysters within its limits. *Stat.* 227. *tit.* 35. *s.* 1. But it does not authorize the town to exclude all the good people of the state, not inhabitants of *Lyme,* from any participation in the fishery of a navigable river, which is a common right. *Peck* v. *Lockwood,* 5 *Day* 22. A power to regulate does not imply a power to entirely prohibit; and whatever regulation is made, must apply equally to all who enjoy the common right.

*Waite* and *McCurdy,* contra, contended, 1. That the place where the oysters were taken, was within the limits of the town of *Lyme;* being on the *East* side both of the middle of the river, and of the middle of the channel.

2. That the town, at the meeting at which the by-laws were passed, had the power to pass those by-laws. In the first place, the warning gave all the notice necessary. It apprized the inhabitants that other business than the regular annual appointments, would be brought before the meeting. This was sufficient to answer the object of the statute. It is impossible, from the nature of the case, to specify before-hand the particular subjects of discussion in a town-meeting. One subject grows out of another;—*e. g.* laying a tax—appointing a collector—allowing him a commission—appropriating the money. If the town can act upon no subject, of which notice has not been given in the warning; this necessarily gives the select-men power to exclude every subject from the consideration of the town meeting; it gives them indeed an unqualified *veto* upon

the acts of the town. Such a power will not be presumed or admitted, unless expressly and explicitly given. By the 7th section of the statute, it is provided, that meetings at which by-laws for restraining horses, cattle, &c. are passed, shall be "*warned for that purpose.*" This is evidently an exception to the general rule of law; for if a specification had already been required in *all* cases, this provision would be useless. Secondly, the provision in question was intended to point out the duty of the select-men in giving the warning, but not to deprive the town of the power of considering and acting upon subjects not specified in the warning.

3. That the by-laws were in themselves valid and unexceptionable. In the first place, the General Assembly had given to the town of *Lyme* the entire controul of this fishery, by patent, and by the general law regarding fisheries. But secondly, the objection, giving it its utmost weight, is applicable only to *one* of the by-laws; and the others, which are in themselves entire, and distinct from this and from each other, are valid. Of a breach of these the plaintiff in error has been found guilty; and in the judgment for a recovery of the forfeiture, there is nothing erroneous.

HOSMER, Ch. J. Towns having clams and oysters within their respective limits, or in the waters and flats to them adjoining and belonging, have power to make by-laws *to regulate* the fisheries of such clams and oysters, and to preserve the same. *Stat. p.* 227.

That the place where the clams and oysters were taken by *Hayden*, was within the political jurisdiction of the town of *Lyme*, if not within the limits of its charter, is indisputable. Every part of *Connecticut* river, so far as relates to jurisdiction, is within some town in the state; or these waters would be a sanctuary for debtors and criminals. Such has been the invariable usage, from a period probably coeval with the first settlement of the towns on the river; certainly, beyond the memory of man. As the place where the oysters were taken, is not within the chartered limits of *Saybrook*, but on the *East* side of the centre of the river, it is within the jurisdiction of the town of *Lyme*.

The question, then, arises with respect to the legal validity of the by-law. By the act concerning towns, (*Stat. p.* 457.) the mode of warning town meetings, is specially prescribed. There is to be a notification in writing, "specifying the objects for

*New London,*
*July,*
*1824.*

Hayden
*v.*
Noyes.

which they are to be held," signed by the select-men, and set upon the public sign-post or posts in the town, at least five days before the meeting. A meeting not warned agreeably to the mode designated, is no legal congregation of the town; and its acts in that capacity, are void. If the object be to regulate the clam and oyster fisheries, that object must be specified in the warning, in an intelligible manner A notification to assemble a town meeting for a lawful purpose, duly specified, and to *do other town business*, is, except as to the specification, as entirely exceptionable, as if the town were warned to meet and do any business they should think proper. It is the purpose of the law, not to prescribe a frivolous form, but to give substantial information. If the object of the meeting is specified, it will present a motive to the inhabitants to be present, and they will leave business, even if it be pressing, provided they feel an interest in the subject to be determined. On the other hand, if the subject is unimportant, and any of the inhabitants should feel no concern in the result, they may, with safety, pursue their ordinary business; and this certainly is matter of convenience. A warning, designating the object of the meeting, is fair, and in prevention of those little artifices, which sometimes endanger the public peace, and throw communities into animosities and divisions. There may be occasions when a town is assembled for some lawful purpose, that an unexpected proposition, quite unexceptionable and promotive of the public good, and unthought of, at the time of the warning, may be made. But these will not happen often, and small inconveniences must be submitted to, as the price of almost every valuable privilege. The warning, in the case before us, neither conforms to the words nor spirit of the law, and, if sanctioned, would repeal the statute. Besides, it would give an opening for conduct the most unfair and inequitable. If it were the object of a few individuals, against the general sense of the community, to regulate the fisheries, it would be easy for them to procure a town meeting warned, to restrain cattle and geese, which the inhabitants in general were known to approve of, with a general clause of *other business*, and then to pursue successfully their silent purpose. I do not intimate, that there was the least unfairness in procuring the meeting of the town of *Lyme*, or in any of their proceedings; but the proper notice was not given to the people, so far as relates to the by-law in question; and therefore, it is void.

It is unnecessary to speculate on the matter of a by-law. that *New-London,* has no legal existence. So far as it is a *regulation,* had the *July,* meeting been duly assembled, it would have been lawful. But *1824.* so far as it transcends this point, and prohibits the inhabitants Hayden of another town, from the use of a common fishery, it is un- *v.* warrantable. Every person has a common law right, to fish in Noyes. a navigable river or arm of the sea, until, by some legal mode of appropriation, this common right is extinguished. *Peck* v. *Lockwood,* 5 *Day* 22.

PETERS, J. was of the same opinion.

BRAINARD and BRISTOL, Js. dissented.

Judgment to be reversed.