### MERRIT MERWIN AND OTHERS *vs.* EZRA WHEELER.

A strip of sandy beach, mainly valuable for its sand as an article of merchandise, was owned in fee by the plaintiffs, and the defendant claimed a prescriptive right to take sand *ad libitum* therefrom. Held that evidence that the defendant, as one of the public, and not as incident to an estate in other lands, had taken sand *ad libitum* from the beach, did not tend to prove an individual prescriptive right.

Such an unlimited right to take the sand would be equivalent to full ownership and inconsistent with the plaintiffs' title in fee.

A prescription, as well as a custom, to be valid must not be unreasonable.

The right would be a *profit a prendre* and not an easement, and such rights must as a general and perhaps universal rule be prescribed for as incident to other lands, for the benefit of or in connection with which the rights are to be exercised.

The word "beach" has no such inflexible meaning that it must denote land between high and low water mark.

It is not necessary that the court should order the parties called before taking in the verdict of the jury.

TRESPASS *quare clausum fregit*; brought to the Superior Court in Fairfield County and tried to the jury on the general issue, with notice, before *Granger, J.* The *locus in quo* was a sand beach adjoining the waters of Long Island Sound, and the trespass charged was the taking of sand therefrom. The notice given was of proof that the beach was a public one and that the public had from time immemorial taken sand from it, and that the defendant had the right in common with the public.

Upon the trial the plaintiffs, in support of the allegations in their declaration, claimed and offered evidence to prove

that between the 1st day of September, 1866, and the 1st day of September, 1869, the defendant at various times entered upon a portion of a sand beach adjoining the waters of Long Island Sound, and, both above and below ordinary high water mark upon the beach, took and removed sand and gravel, some of which he sold to other persons. The beach extends from Beach Lane, so called, and referred to in the deeds to be mentioned, in a westerly direction about one hundred and eighty rods, is of an average width of about four rods above ordinary high water mark, and of an average height of about four and a half feet above ordinary high water mark. It is connected with no upland, except at its end east of Beach Lane, where it meets the upland.

Adjoining the beach upon the north is an extended field of salt marsh and salt meadow, over which the tide ebbs and flows, owned by a large number of separate proprietors, the boundary lines between whom run parallel with the beach.

A tract of this salt meadow extending next to the beach a distance of about thirty rods westerly from Beach Lane, has been reclaimed by the plaintiffs, by means of dykes excluding the salt water.

The plaintiffs claimed that during all the time between the dates aforesaid they were the owners of that portion of the beach in fee simple, and in exclusive possession of the same, and, in support of their claim, introduced in evidence two deeds made to their father, John P. Merwin, one by Lewis Kirtland, dated November 2, 1841, and the other by Joseph Banks, dated June 25, 1846, by both of which the land conveyed was bounded " southerly on the beach," and claimed title by inheritance from their father, who died in the year 1858.

The defendant claimed, and asked the court to instruct the jury, that by these deeds John P. Merwin acquired title only to the land lying northerly of the beach and up to the same. The plaintiffs claimed, and asked the court to instruct the jury, that by the term beach was meant the space between ordinary high and low water marks, and that by the deeds the southern boundary line of the grantee was ordinary high

water mark. The court instructed the jury as requested by the plaintiffs.

The defendant claimed, and introduced evidence to prove, that the tide ebbed and flowed over the land on the north side of the beach, and claimed that the plaintiffs' southern boundary extended only to ordinary high water mark on the north side of the beach. The court did not so charge the jury, but instructed them that it was their province to decide where ordinary high water mark was.

The defendant claimed that the grantors of John P. Merwin had never had any title to or exclusive possession of the beach, and that he and the plaintiffs had never had title or such exclusive possession, and in support of the claim introduced evidence from a large number of witnesses to prove that the beach was and immemorially had been a public beach ; that from time immemorial the public had resorted to it, and passed and driven over it, and taken therefrom continuously large quantities of seaweed, sand and gravel, for use and merchandise ; that John P. Merwin and the plaintiffs, long before the deeds were given, or there was any claim of title by them to the beach or adjoining salt meadows, had for many years carted from the beach large quantities of sand and gravel and sold the same ; that from time immemorial the meadows north of the beach had been fenced off from it by a fence running the north side of the beach, which was continued until about the year 1850, when John P. Merwin built a fence on the top of the beach opposite his salt meadow, which remained but a year or two ; that such use of the beach had been without hindrance or interruption, and without any claim of private right to the beach by the owner of the adjoining salt meadows, except that Lewis Kirtland, shortly before his conveyance to John P. Merwin, posted a notice at the entrance of the beach from Beach Lane, forbidding persons to take sand and gravel from the beach, which remained posted for a day or two only, and was disregarded by everybody having occasion to take sand and gravel from the beach, and among others by John P. Merwin and the plaintiffs ; and except that John P. Merwin and the plaintiffs, on two or

three occasions after the conveyances to the former, notified the defendant not to take sand and gravel from the beach, which notice was disregarded by the defendant, and that the plaintiffs in the year 1864 brought a suit against the defendant, which, as the defendant claimed, was compromised by his son without his knowledge and during his sickness and absence. To the admission of this evidence for the purpose stated the plaintiffs objected, but the court admitted it.

The defendant claimed that if the beach was owned by the plaintiffs, he had acquired by prescription a right to remove sand and gravel from the same, and in support of this claim, and also to show that neither the plaintiffs nor those from whom they claimed title had the exclusive possession of the beach, the defendant claimed and offered evidence to prove that for the period of twenty years he had continuously and uninterruptedly taken sand and gravel from that portion of the beach for use and for sale. To this evidence the plaintiffs objected upon the ground that the evidence was not admissible as tending to establish a prescriptive right of the character claimed by the defendant, but the court admitted the evidence for such purpose.

Upon his closing argument to the jury the plaintiffs' counsel claimed to the court that such evidence was inadmissible under the allegations in the defendant's notice, but the court did not exclude the evidence.

The plaintiffs claimed that certain posts, now below ordinary high water mark on the south slope of the beach, were at some former period a part of the fence on the meadow of the plaintiffs north of the beach, and offered evidence to prove that since the purchase by John P. Merwin, the beach had been carried northerly of the posts a considerable distance by the action of the sea, in some parts of it as far as its present width, and that the defendant took and carried away sand and gravel from that portion of the beach so claimed to have been carried north of the posts. The defendant claimed that such was not the fact, and introduced evidence in opposition to the evidence of the plaintiffs upon this point.

It was left to the jury as a matter of fact to determine whether the beach had been carried northerly as claimed by the plaintiffs, the defendant admitting that if the fact was as claimed by the plaintiffs, and that if he had within three years next prior to the commencement of the suit entered upon the beach so carried northerly and taken sand and gravel therefrom, he was liable.

The court, in answer to the written request of the plaintiffs, charged the jury that whatever, if anything, had been gradually added to the land of the plaintiffs by the action of the sea, belonged to them as owners of the land to which it was added, and if by the gradual action of the sea a portion of the plaintiffs' land has been washed away and the water now rose higher upon their land than formerly, it was the plaintiffs' loss. Their title would still extend only to ordinary high water mark.

No claim was made by the defendant, that the public by a user of fifteen years or more had acquired a right to take sand and gravel from the beach in opposition to the will of the owners of the same. The defendant admitted that the public could not by such user acquire such a right by prescription.

No evidence was introduced respecting the mode in which the salt meadows, of which the plaintiffs' land was a part, were originally held, nor how or when or between whom the same were divided; nor was any claim respecting such original holding or division made upon the trial.

As to the mode in which a right by prescription may and must be acquired, the court charged the jury, in conformity to the claim of the plaintiffs, as follows: "To gain a right by prescription the defendant must have exercised the right continuously and uninterruptedly for more than fifteen years, and with the knowledge and acquiescence of the owners of the land. It must have been adverse to the owners' claims, and be such a user as would indicate a claim of right on his part and a yielding of the right on the part of the owners. Prescription presupposes a grant; hence a denial of the right by the owner, or opposition to such use, negatives the

claim; and it is proper for the jury to consider if this right has been, or has not been, a subject of contention, in determining whether there has been acquiescence in the defendant's claim."

After the charge the jury retired from the court room for consultation, and held the case under consideration during the remainder of the day and the day following, until $12\frac{1}{2}$ o'clock P. M., when they came into court, and by their foreman announced that they had not agreed upon a verdict. The court directed them to keep the case under consideration longer and then adjourned to 2 o'clock P. M. At that hour the jury came into court and returned a verdict for the defendant.

Only one of the plaintiffs attended the trial and proceedings at any time, and that one left the court-house and went to his home at the time of the adjournment at $12\frac{1}{2}$ o'clock P. M. Neither of the plaintiffs was present when the jury came into court in the afternoon and rendered their verdict, and the plaintiff who attended the trial did not come into court till after the jury had rendered their verdict and been discharged from the case and were leaving the court-room. The plaintiffs had but two attorneys in the cause, and one of them was necessarily absent from the court during the day, engaged in the trial of a case in another court, held about twenty rods from the court house, and was not present that day. The other was in attendance at court at $12\frac{1}{2}$ o'clock P. M., when he received a dispatch summoning him from court. But he sent by a messenger a notice to the other counsel that he must leave. The messenger did not deliver this notice till after the verdict was rendered and the court adjourned. The plaintiffs' other counsel would have attended at once if he had received the notice or had knowledge of the absence of his associate. The court had no notice of the absence of the plaintiffs' counsel, or of the absence of the plaintiffs, when the verdict was rendered.

The plaintiffs thereupon moved that the judgment be arrested, on the ground that the verdict was received and the jury discharged in the absence of the plaintiffs and their

counsel and without their being called; which motion the court over-ruled.

The plaintiffs filed a bill of exceptions, stating and excepting to the ruling of the court with regard to the construction of the deeds under which the plaintiffs claimed, and brought the case before this court by a motion in error. They also moved for a new trial for error in the rulings and charge of the court.

*Sturges* and *Child*, in support of the motions.

1. It was the duty of the court to have had the plaintiffs called before the verdict was taken in, and judgment should have been arrested because this was not done. No notice was taken of their absence and that of their counsel. The jury had been out for their second day, had already reported a disagreement, when immediately on the opening of court in the afternoon, without any effort being made to notify the plaintiffs, who were present before the jury had left the building, or their counsel, who were not remiss in their duty, and without even enquiry being made, the verdict was received and the jury discharged. This is contrary to common law. 3 Black. Com., 376 ; 1 Swift Dig., 773. And contrary also to precedent. *The People* v. *Mayor's . Court of Albany*, 1 Wend., 36 ; Duncomb's Trials per Pais, 257 ; *State* v. *Hurlbut*, 1 Root, 90.

2. The plaintiffs, in support of their title, had introduced certain deeds, and the court had construed the boundaries therein given as carrying the southern boundary line of the plaintiffs up to high water mark ; the defendant had disputed this claim, and in support of his theory introduced certain testimony, which was admitted by the court, to prove two propositions :—1. That the plaintiffs' father, who derived title by deed, never had any title to or an exclusive possession of the beach in controversy. 2. That defendant had a claim by prescription. The evidence was to prove the beach a public beach, in order to defeat the plaintiffs' title by deed. This was not admissible ; because—1. The use by the public gave the defendant no right as against the owner. To gain

a right adverse to the plaintiffs the defendant must have gained a title by prescription. This right is an individual right and cannot be proved by a use on the part of the public. Nor would public use give the defendant any claim thereto.—2. The defendant by this evidence also attempted to justify the right to take the sand for sale. This is simply a *profit a prendre*. The defendant to gain this must have claimed to have prescribed in a *que estate*. But this is an individual right and is not proved by a general use. Washb. on Easements, 80 ; *Perley* v. *Langley*, 7 N. Hamp., 233 ; *Selby* v. *Robinson*, 2 T. R., 758.— 3. The evidence necessary to show the right by prescription, as claimed, must have been such as showed a claim against the will of and adverse to the plaintiffs. This is not established by evidence of user only ; something more must be shown, as giving the defendant an exclusive use against the plaintiffs. The public, as such, acquire no right by prescription or custom. Washb. on Easements, 77, 78, 128, 129 ; *Post* v. *Pearsall*, 22 Wend., 425, 432 ; *Cortelyou* v. *Van Brunt*, 2 Johns., 357 ; *Manion* v. *Creigh*, 37 Conn., 462, 464 ; *Williams* v. *N. York & N. Haven R. R. Co.*, 39 Conn., 509 ; *State* v. *Wilson*, 42 Maine, 9, 28 ; *Bethum* v. *Turner*, 1 Greenl., 111. A use by the public is too indefinite and uncertain to gain a right as against the owners by deed. It is not analagous to a right of passage, and what supports such right does not justify a removal of the soil.—4. So far as the possessory right of the plaintiffs, necessary to sustain their action of trespass, is concerned, it is only important for them to show a title to the beach in connection with the fact that it was not in exclusive possession of others. *Church* v. *Meeker*, 34 Conn., 422. This possession is not attacked by proving a previous occupation with the plaintiffs, anterior to the date of the alleged trespass, by the public generally ; the plaintiffs having title and the use themselves.—5. The evidence was inadmissible under the pleadings. If the defendant had gained this prescriptive right, it was to be pleaded as special matter of avoidance. The only ground of justification pleaded was a right in common with the public ; this is not enough. *Merrill* v. *Everett*, 38 Conn., 40.

This objection was made specifically in asking the court to exclude the testimony, it having been already objected to.

3. The court erred in the construction put upon the deeds under which the plaintiffs claimed. There can be no question that the southerly boundary of the property conveyed was, at the very least, ordinary high water mark, and that as matter of law the beach belonged to the plaintiffs. *Lockwood* v. *N. York & N. Haven R. R. Co.*, 37 Conn., 387, 390 ; *Commonwealth* v. *City of Roxbury*, 9 Gray, 451 ; *Niles* v. *Patch*, 13 id., 254, 257.

*Beardsley*, with whom was *Seeley*, contra.

1. The evidence offered by the defendant to show that the beach in question was a public beach, and that, at the time of the alleged trespasses, the plaintiffs were not in exclusive possession of the *locus in quo*, was admissible. 1st. The statutes of the state recognize public beaches and make provision for their protection. Rev. Statutes of 1866, p. 251, § 41 ; p. 400, § 3 ; *Church* v. *Meeker*, 34 Conn., 421. 2d. The evidence was apt to prove that this beach was of that character. 3d. Such evidence was admissible to show that the plaintiffs were not in exclusive possession of the beach.

2. The evidence offered by the defendant was admissible to show a prescriptive right of the character claimed by him.— 1st. That a valid grant might have been made by the plaintiffs to the defendant of the right claimed by prescription is undeniable. *Muskett* v. *Hill*, 5 Bing. N. C., 694.—2d. Whatever may be granted, may be acquired by prescription, which proceeds upon a presumption of grant. *Chalker* v. *Dickinson*, 1 Conn., 382 ; Washb. on Easements, 101.—3d. It is not necessary to the acquisition of such prescriptive right that the defendant should own or occupy some other land to which it is appurtenant. Coke Litt., 122 *a* ; *Mellor* v. *Spateman*, 1 Wms. Saund., 346 ; *Post* v. *Pearsall*, 22 Wend., 425, 432 ; *Perley* v. *Langley*, 7 N. Hamp., 235 ; Washb. on Easements, 8, 119, 120 ; *Wickham* v. *Hawker*, 7 Mees. & Wels., 63.—4th. The objection that this evidence was inadmissible under the allegations in the defendant's notice came too late, if other-

wise entitled to weight. *Rathbone* v. *City Fire Insurance Co.*, 31 Conn., 193.

3. The court should have charged the jury as requested by the defendant, as to the southern boundary of the property described in the plaintiffs' deed. 1st. It appears by the motion that the beach in question is above ordinary high water mark. 2d. Such is or may be the meaning of the term *beach* by the law of Connecticut. See *Church* v. *Meeker*, and statutes, cited supra. 3d. Upon no rule of construction can the title of the plaintiffs be extended over the beach to high water mark. *Niles* v. *Patch*, 13 Gray, 254.

4. The plaintiffs cannot properly complain that, under the circumstances, the verdict was received by the court and the jury were discharged in the absence of the plaintiffs and their counsel. Besides, the ancient practice of calling the parties before receiving a verdict has been abandoned in this state, and there is now no such recognized practice.

SEYMOUR, C. J. The land in dispute is a sand beach, about one hundred and eighty rods in length, four rods wide, and of an average height of four and half feet above high water. It is connected with the upland on the east by what is called "Beach Lane," and is bounded southerly by Long Island Sound proper, and on the west and north by a cove of salt water flats, over which the tide rises and falls, but which seems to be private property.

The defendant is sued for entering upon this sand beach and carting away large quantities of sand, and that he did the acts for which he is sued is admitted. The jury under the instruction of the court, found that the plaintiffs owned the premises in dispute in fee, and the verdict, which was for the defendant, must have been rendered for him on one of two grounds; either, first, that the public had by long continued user acquired the right to take sand from the premises *ad libitum*, or, second, that the defendant as an individual had by prescription acquired such right.

It seems clear to us that the verdict cannot be sustained on the ground of an incorporeal right in the unorganized

public to take the sand. Indeed the evidence offered by the defendant does not seem to be directed to the establishment of such a right, as distinct from the title to the land itself. The motion says "the defendant offered a large number of witnesses to prove that said beach was and immemorially had been a public beach; that from time immemorial the public had resorted to it, and passed and driven over it, and taken therefrom continually large quantities of sea-weed, sand and gravel, for use and merchandise, &c." This evidence was undoubtedly admissible as tending to show that the title and possession of the premises was not in the plaintiffs. It might tend to show that the sand bank had never been included in any grant from the state, but was left a public beach, open to the common use of the public, like the sea itself and its shores. But the jury found that the plaintiffs owned the land, and the question is whether this public use proved, or tended to prove, an easement in the public to take sand from the plaintiffs' land, or tended to prove such right as a *profit a prendre*. Now even if the unorganized public is capable of taking such a right by grant or acquiring it by prescription, which it would seem they are not, we think the evidence is not adapted to the establishment of a *subordinate* right or easement in the premises. This subject is fully and learnedly discussed in *Post* v. *Pearsall*, 20 Wendell, 111, and 22 Wendell, 425, where all the cases bearing on the question are cited.

The verdict then, if sustainable at all, must be justified on the ground that the defendant had an individual prescriptive right to take and carry away the sand from the plaintiffs' land. The evidence to prove such prescriptive right was "that the defendant for the period of twenty years had continuously and uninterruptedly taken sand and gravel from the portion of the beach in dispute for use and for sale;" that is, the defendant, to prove a prescriptive right in himself, offered evidence showing that he had done precisely what the public had done; that he, in other words, as one of the public, had taken sand from the beach *ad libitum*. He did this, not as the owner of other lands, for the benefit of those

lands and as incident to an estate in such other lands, but in gross, as one of the public, and not under any claim of individual right in himself other than as one of the public.

We think this evidence did not show an individual prescriptive right in the defendant and so far as it was received as tending to show such right was inadmissible.

It is further to be observed that the property in dispute appears to be valuable mainly and perhaps solely for its sand as an article of merchandise. An unlimited right in the defendant to take and sell all the sand is therefore equivalent to full ownership and is inconsistent with the title in fee of the plaintiffs. The claim of such a right in another's land by custom or by prescription is unnatural and unreasonable, and is not sanctioned by the law. If allowed the whole beach would be at the defendant's mercy. A prescription as well as a custom to be valid must not be unreasonable. *Clayton* v. *Corby*, 5 Adol. & El., N. S., 415, 422.

Again, this right is prescribed for in gross, and not as appurtenant to other lands. The right, if it exists, is a *profit a prendre* and not a mere easement, and such rights must generally and perhaps universally be prescribed for not in gross, but as incident to other premises for the benefit of which and in connection with which the rights are to be exercised. *Grimstear* v. *Marlone*, 4 T. R., 717.

We therefore advise a new trial.

The defendant, under the statute authorizing him so to do, has filed his bill of exceptions, claiming that the judge's charge at the trial was wrong in regard to the construction of the plaintiffs' deeds, and upon examination of the deeds in connection with the maps of the premises we think the judge was wrong in saying to the jury " that the sand beach was by operation of law embraced in the conveyance, and that the title acquired thereby extended to ordinary high water mark."

The high water mark referred to in the charge is that mark on the south side of the sand beach. The deeds bound the land conveyed " southerly on the beach," but it seems there are two southerly boundaries which may answer this description; one is the sand beach, the other is the Long Island

Sound beach, namely, the space between high and low water mark on the south side of the sand beach. There may perhaps be also another beach, namely, the space between high and low water mark on the north side of the sand beach. The maps seem to indicate such a beach, but the record does not distinctly show that it exists. We think it was competent to show by the other parts of the deeds and by the situation and use of the property and also by proper parol evidence, which of the beaches was intended.

We see no reason for holding that in law the beach means the shore of Long Island Sound, especially as the deeds do not bound the premises by the Sound. The word "beach" has no such inflexible meaning that it must denote land between high and low water mark. The premises in dispute are called either sand beach, or beach simply without the prefix. The plaintiffs in their writ bound their premises southerly by "Long Island Sound," which would seem to be the natural mode of describing them in the deeds, if it had been intended that they should extend to ordinary high water mark on the Sound.

Some other questions were made on the trial which it is unnecessary to notice. One question of practice however was considerably discussed at the bar, concerning which it is proper, we think, for us to express our opinion. It is claimed by the plaintiffs that the court ought to have made a formal call of the parties before taking the verdict of the jury. A practice formerly existed of making such call, but it has for many years been discontinued. The plaintiff may at any time become nonsuit before the verdict is taken in, but if he neglects to avail himself of that privilege he must suffer the consequences. It is not the duty of the court to call the parties. They are bound to be present, and after appearance are presumed to continue their appearance until they ask to be called and to disappear.

In this opinion the other judges concurred.