BRENDEN P. LEYDON *v.* TOWN OF
GREENWICH ET AL.
(AC 18628)

O'Connell, C. J., and Lavery and Mihalakos, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 29, 1999—officially released May 16, 2000

*Brenden P. Leydon,* pro se, the appellant (plaintiff).

*Ralph G. Elliot,* for the appellees (named defendant et al.).

*Mark R. Kravitz,* with whom was *Suzanne E. Wachsstock,* for the appellee (defendant The Lucas Point Association, Inc.).

*Philip D. Tegeler, Jody L. Yetzer* and *Martin B. Margulies* filed a brief for the Connecticut Civil Liberties Union as amicus curiae.

*Opinion*

O'CONNELL, C. J. The plaintiff, Brenden P. Leydon, appeals from the judgment of the trial court denying his request for declaratory and injunctive relief from an ordinance of the named defendant, the town of Greenwich (town),[2] which he contends discriminates against noninhabitants of the town as to access to its public parks and public beaches. The plaintiff claims

---

[2] The other defendants in this action are the board of selectmen of the town of Greenwich; John B. Margenot, Jr., a former first selectman of the town of Greenwich; and The Lucas Point Association, Inc., which owns real property that provides the only access to Greenwich Point Park, which is the subject of this action.

that the court improperly determined that the ordinance does not violate public policy or the public trust doctrine.[3] We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The town owns and operates a 147 acre park known as Greenwich Point Park (park), which includes a beach area (beach) on Long Island Sound.[4] The town's authority to maintain the park is derived from 18 Spec. Acts 103, No. 124 (1919), as amended by 27 Spec. Acts 60, No. 71, § 9 (1955) (we will refer to the 1919 special act, as amended by the 1955 special act, as the act).[5] The only road

---

[3] The plaintiff raises several other claims that we do not address because our resolution of this claim is dispositive of the appeal.

[4] In its memorandum of decision, the court referred to the park and the beach together as the "point." We use the term park to refer to the entire park, including the beach area, and use the term beach to refer only to the beach portion of the park.

[5] Special Act No. 124 (1919) provides: "The town of Greenwich may establish, maintain and conduct public parks, playgrounds, bathing beaches and recreation places, together with such means of transportation thereto as may be necessary or desirable, and may acquire by purchase or lease or otherwise, land and property necessary thereto, and may equip said parks, playgrounds, bathing beaches and recreation places with all necessary buildings and equipment for the use of the inhabitants of said town. Said public parks, playgrounds, bathing beaches and recreation places and their appurtenances shall be under the direction of the selectmen of said town and such moneys as shall be required for the aforesaid purposes shall be appropriated in the same manner as is provided for the other appropriations for the expenses of said town by the act changing the form of government of said town, approved July 20, 1909. The money appropriated for any deficiency in maintaining and conducting parks, playgrounds, bathing beaches, recreation places and means of transportation shall be raised by taxation. Appropriations for cost of land or permanent improvements shall be met by taxation or the issuance of bonds as the town may elect." 18 Spec. Acts 103, No. 124 (1919).

Section 9 of Special Act No. 71 (1955) provides: "The second sentence of number 124 of the special acts of 1919 is amended to read as follows: Said public parks, playgrounds, bathing beaches and recreation places and their appurtenances shall be managed by the chief administrative officer under the supervision and control of the selectmen of said town, and said selectmen may enact ordinances governing the use by said inhabitants of such parks, playgrounds, bathing beaches and recreation places together

access to the park is over land owned by the defendant The Lucas Point Association, Inc. (association), which in 1945 granted an easement to the town that allowed public access to the park.

The plaintiff, who is not a resident of the town, sought access to the park, but he was denied entry because he could not satisfy a town ordinance that allows only residents or their duly authorized guests to enter the park. The ordinance, contained in the Greenwich municipal code, creates residency restrictions for all of the town's public parks and public beaches.[6]

Thereafter, the plaintiff filed this action requesting injunctive and declaratory relief. His amended com-

with means of transportation thereto, and governing the conduct of said inhabitants thereon, which ordinances may provide for the imposition of a fine not exceeding twenty-five dollars for any violation thereof. Such moneys as shall be required for the aforesaid purposes shall be appropriated in the same manner as is provided for other appropriations for the expenses of said town." 27 Spec. Acts 60, No. 71, § 9 (1955).

[6] The ordinance provides in relevant part: "[Sec. 7-30] . . . In accordance with No. 124 of the Special Acts of 1919, as amended, and recognizing that *public parks* . . . have been acquired . . . for the use of the inhabitants of the Town . . . *only inhabitants of the Town* may enter, remain upon or use [the town's] parks . . . .

"[Sec. 7-36] . . . [R]ecognizing that *public beaches* . . . have been acquired . . . for the use of the inhabitants of the Town . . . *only inhabitants of the Town* may enter, remain upon or use *public beaches* . . . except for guests of inhabitants of the Town . . . .

"[Sec. 7-37] . . . Beach passes may be obtained by inhabitants of the Town . . . .

"[Sec. 7-38] . . . No person shall enter upon . . . any beach without a duly issued beach pass . . . .

"[Sec. 7-39] . . [E]ach family of inhabitants . . . may obtain admittance of not more than eight (8) guests on any one day to any Town owned beach . . . provided such guests are actually visiting with said family's residence and . . . [the inhabitant] *accompan[ies]* said guests and *remains with them* at the facility. . . .

"[Sec. 7-56] . . . A. Any person violating any of the provisions of [the] ordinance shall be subject to a fine not to exceed twenty-five ($25.00) for each offense. . . .

"C. Any person obtaining a beach pass . . . or the admission of a guest by the making of a false statement under oath shall have any and all rights

plaint alleged that the town "holds the [p]ark in trust for the use of the general public. . . . [and the ordinance is] void as violative of the public trust" and "void as violative of the public policy of . . . Connecticut as set forth in its . . . common law, which guarantees access to municipally held parks and beaches for all citizens."

After an evidentiary hearing, the court ruled that "[t]he plaintiff . . . has not provided the court with *any authority* which *even remotely* suggests that Connecticut applies the New Jersey public trust doctrine[7] to its common law. . . . [T]he court [therefore] rejects, as applicable to the present case, the plaintiff's public trust arguments. . . .

"The public policy that was violated by the town, according to the plaintiff, is a well known public policy in . . . Connecticut . . . that all public parks are open to the public at large. The plaintiff, however, [has] not provide[d] the court with *any binding authority* which suggests that such a public policy exists as applied to the present case. . . .

"[T]he court finds that the plaintiff has not met his burden of proof beyond a reasonable doubt that the Greenwich ordinance [is] invalid." (Emphasis added; internal quotation marks omitted.)

## I

The plaintiff claims that the court improperly declined to apply the public trust doctrine to the facts

or privileges to (1) Use the parks or beaches . . . suspended for a period of one year . . . ." (Emphasis added.)

[7] The New Jersey Supreme Court has held: "[W]here the upland sand area is owned by a municipality . . . and dedicated to public beach purposes . . . the public trust doctrine dictates that the beach . . . must be open to all . . . [and municipalities] may not discriminate in any respect between their residents and non-residents." *Neptune City* v. *Avon-by-the-Sea*, 61 N.J. 296, 308–10, 294 A.2d 47 (1972).

of this case and improperly determined that there was insufficient evidence to establish that the ordinance violates the public trust doctrine or the public policy of this state. The town counters that the ordinance violates neither public policy nor the public trust doctrine, and that the public trust doctrine is inapplicable here because it does not exist in Connecticut.[8] The town further asserts, alternatively, that the legislature abolished the doctrine, as to the town, through the act. We agree with the plaintiff and reverse the judgment of the trial court.

Our analysis begins with a discussion of our standard of review. Whether the public trust doctrine should have been applied to the facts of this case is an issue of law subject to de novo review. As to the claim of sufficiency of evidence, we review the proceedings of the trial court and "reverse or modify the decision of the trial court . . . if we determine that . . . its decision is . . . erroneous in law." (Internal quotation marks omitted.) *Ormsby* v. *Frankel*, 54 Conn. App. 98, 109–10, 734 A.2d 575, cert. granted on other grounds, 250 Conn. 926, 738 A.2d 658 (1999).

[8] The defendants claim that our Supreme Court has expressly considered and rejected the notion that the Connecticut public trust doctrine encompasses dry sand beaches, such as the beach at issue here. They assert, relying on *Leabo* v. *Leninski*, 182 Conn. 611, 438 A.2d 1153 (1981), that our public trust doctrine extends only to navigable waterways and the lands beneath them between the high and low tide marks.

The court in *Leabo*, however, neither expressly considered nor rejected the application of our public trust doctrine to dry sand beaches. In fact, the *Leabo* court stated that "while other jurisdictions have recognized public access to the dry sand beaches, they have done so on theories *which do not apply to the present case.*" (Emphasis added.) Id., 618. Furthermore, *Leabo* concerned "public access to . . . [a] *privately owned* dry sand area"; (emphasis added) id., 617; whereas this case concerns public access to a public beach and park, both of which are owned by a municipality. Our Supreme Court also has determined that the public has a "right . . . to reach the water front by crossing a public park." *Orange* v. *Resnick*, 94 Conn. 573, 581, 109 A. 864 (1920).

To resolve the plaintiff's claim, we address three questions of law. We must determine whether (1) the public trust doctrine exists in this state to the extent propounded by the plaintiff, (2) the court improperly declined to apply the doctrine to the facts of this case and (3) the court improperly concluded that the plaintiff failed to produce evidence sufficient to establish that the ordinance violates public policy or the public trust doctrine.

A

The plaintiff claims that because he is a resident of this state he is entitled to access to the park, including the beach area, regardless of the fact that he is not a resident of the town. We agree.

For almost two centuries, our Supreme Court has discussed the concept that land held by a municipality as a public park or public beach is held for the use of the general public and not solely for use by the residents of the municipality. See *Hayden* v. *Noyes*, 5 Conn. 391, 397 (1824) (invalidating town bylaw restricting use of common fishery to town inhabitants); *Merwin* v. *Wheeler*, 41 Conn. 14, 24 (1874) (public beach open to common use of public); *Hartford* v. *Maslen*, 76 Conn. 599, 611, 57 A. 740 (1904) (authority of municipality to control public parks derived from legislature and municipality holds public parks for use by general public); *Dawson* v. *Orange*, 78 Conn. 96, 119, 61 A. 101 (1905) (public beach held for use by general public); *Orange* v. *Resnick*, 94 Conn. 573, 581, 109 A. 864 (1920) (general public has right to access waterfront by crossing public park); *Conners* v. *New Haven*, 101 Conn. 191, 194, 125 A. 375 (1924) (land held by municipality as public park inures to benefit of general public); *Epstein* v. *New Haven*, 104 Conn. 283, 284, 132 A. 467 (1926) (control of public parks belongs to state and municipalities managing them act as agencies exercising authority

delegated by state); *Winchester* v. *Cox*, 129 Conn. 106, 111, 26 A.2d 592 (1942) (land given to municipality for use as park held in trust by municipality as trustee for public); *Fenwick* v. *Old Saybrook*, 133 Conn. 22, 29–30, 47 A.2d 849 (1946) (park held for use by general public); *Hiland* v. *Ives*, 154 Conn. 683, 690, 228 A.2d 502 (1967) (legislative authority necessary for municipality to own, maintain park for benefit of public as whole, and municipality may not devote park to inconsistent use); *Torrington* v. *Coles*, 155 Conn. 199, 201, 230 A.2d 550 (1967) (municipality holds land used for public park not for sole use of inhabitants of municipality but for use of general public); *Stradmore Development Corp.* v. *Commissioners*, 164 Conn. 548, 551, 324 A.2d 919 (1973) (lands held by municipality as park are for benefit of people of Connecticut at large); *Luce* v. *West Haven*, 238 Conn. 687, 691, 680 A.2d 259 (1996) (*Berdon, J.,* concurring) (municipal property within public domain). These cases clearly reflect that land held by a municipality as a public park or public beach is for the benefit of all residents of this state. We refer to this right as the public trust doctrine,[9] and hold that it does not allow a municipality to discriminate between its residents and nonresidents with regard to access to a public park or public beach.[10]

---

[9] The defendants attempt to distinguish the public park "trust" doctrine from the public trust doctrine and argue that neither confers on the plaintiff the right to access the park. According to the defendants, the public park "trust" doctrine applies only to parks and not to beaches, and the public trust doctrine is not applicable to dry sand beaches. In light of the cases cited herein, we conclude, to the contrary, that both doctrines confer upon the plaintiff the right to access the beach, and that the public park trust doctrine confers upon him the right to access the park, including the beach area of the park. To avoid confusion between these two doctrines, however, we refer to the doctrines, collectively, as the "public trust doctrine."

[10] We do not address whether a violation of the public trust doctrine would occur if the town were to charge a nominally higher fee to nonresidents than town residents for access to the park and beach because that issue is not before us. Accordingly, although we hold that the public trust doctrine prohibits the town from discriminating against nonresidents as to access to the park and beach, we reserve for another day the issue of whether it

B

Having determined the scope of the public trust doctrine as it exists in Connecticut, we must next decide whether the court improperly declined to apply the doctrine to the facts of this case. The plaintiff argues that it was improper for the court to decline to apply the doctrine here, whereas the defendants assert that the doctrine is inapplicable in this case because the legislature abolished the doctrine, as to the town, through the act. We agree with the plaintiff.

Although the town contends that the act is beyond our scope of review because the plaintiff has not challenged its validity, we are compelled nevertheless to review the scope of the act because the town has made it an issue.[11] Because the plaintiff has not challenged the validity of the act, we will assume, without deciding, that the act is constitutionally valid. *United Illuminating Co.* v. *New Haven*, 179 Conn. 627, 641, 427 A.2d 830 ("a presumption of constitutionality . . . attaches to a statutory enactment"), appeal dismissed, 449 U.S. 801, 101 S. Ct. 45, 66 L. Ed. 2d 5 (1980). Thus, we need determine only whether the town's reading of the act— i.e., that the legislature abrogated the common law public trust doctrine through its passage—is correct.[12]

is permissible under the doctrine for the town to add a de minimis surcharge to the entrance fee charged to nonresidents.

[11] The town argues that because the plaintiff did not challenge the validity of the act or demonstrate at trial that the act is incompatible with the public trust doctrine, those issues may not be considered by this court on appeal. This argument is fallacious because the town itself has brought the scope of the act into question by using it as a basis for the proposition that the town ordinance does not violate the public trust doctrine.

[12] The town argues that because the legislature alone determines whether and the extent to which a municipality may establish or conduct public parks, the act overrides the public trust doctrine. The town's reliance on *Baker* v. *Norwalk*, 152 Conn. 312, 314–15, 206 A.2d 428 (1965), for this proposition is misplaced, however, because the language cited in *Baker* stands for the proposition that a municipality may exercise only those powers that are expressly granted to it or are necessary to carry out its objects and purposes, and the powers granted in *Baker* by the legislature

We begin our analysis of the act by noting that statutory construction is a question of law, and our review, therefore, is plenary. *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). Although the legislature may eliminate a common-law right by statute, the courts will not lightly impute such an intent to the legislature. *Munroe* v. *Great American Ins. Co.*, 234 Conn. 182, 187, 661 A.2d 581 (1995). We do not read statutes to depart from the common law without a clear indication of legislative intent to do so. *Elliot* v. *Sears, Roebuck & Co.*, 229 Conn. 500, 515, 642 A.2d 709 (1994). A statute should not be construed as altering the common law unless the intent to do so is fairly expressed in the statute. *Gore* v. *People's Savings Bank*, 235 Conn. 360, 382, 665 A.2d 1341 (1995); *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 573, 522 A.2d 763 (1987); *State* v. *Kish*, 186 Conn. 757, 764, 443 A.2d 1274 (1982).

We must presume that the legislature passed the act in view of the existing law and intended it to be read with it so as to make one consistent body of law. *Cagiva North America, Inc.* v. *Schenk*, 239 Conn. 1, 8, 680 A.2d 964 (1996). We must further presume that the legislature did not intend to abridge or modify the common law, a presumption that can be overcome only if the legislative intent to do so is clearly, plainly and unambiguously expressed. *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 715, 735 A.2d 306 (1999). Therefore, absent such an affirmative statement to the contrary, the legislature did not intend to change the existing common-law doctrine. *In re Ralph M.*, 211 Conn. 289, 300, 559 A.2d 179 (1989).

In construing the act, we must determine and effectuate the intent of the legislature in enacting the legislation. See *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d

to the city of Norwalk in the act at issue in that case and necessitated by that act are entirely consistent with the common-law doctrine. Id., 316–19.

851 (1996); *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). To determine legislative intent, we first look to the words of the act itself and then, if appropriate, to the legislative history and circumstances surrounding its enactment, to the public policy behind the act, and to its relationship with other legislation and common-law principles controlling the same general subject matter. *Alvarez* v. *New Haven Register, Inc.*, supra, 249 Conn. 714–15; *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 25, 727 A.2d 204 (1999).

If the language of the statute is unambiguous, we should not look beyond its words. *Caldor, Inc.* v. *Heffernan*, 183 Conn. 566, 571, 440 A.2d 767 (1981). "A statute does not become ambiguous merely because the parties contend for different meanings." (Internal quotation marks omitted.) *Glastonbury Co.* v. *Gillies*, 209 Conn. 175, 180, 550 A.2d 8 (1988).

The act at issue, as amended, is clear and unambiguous. It provides in relevant part: "The town of Greenwich may establish, maintain and conduct public parks . . . [and] bathing beaches . . . and may acquire . . . land and property necessary thereto . . . for the use of the inhabitants of said town. . . . [The town] may enact ordinances governing the use by said inhabitants of such parks . . . [and] bathing beaches . . . [and the] ordinances may provide for the imposition of a fine . . . for any violation thereof. . . ."

The act specifies that the town is authorized to maintain *"public* parks . . . [and] beaches," (emphasis added) but nothing in its language indicates that the legislature intended the town to maintain parks and beaches for the benefit of *only* its residents. The town argues unsuccessfully that the accompanying language, "for the use of the inhabitants of [Greenwich]," prohibits the town from maintaining parks and beaches for the benefit of anyone other than town residents.

This interpretation is contrary to both Connecticut law and the act's language. The language of the act does not expressly limit use of the public beach to *residents only*, as the town argues. Rather, the language clarifies that the town's parks and beaches are intended to exist for the benefit of the public, including the town's residents. The legislature did not define the term "bathing beaches" or specify that it intended the town's beaches to be nonpublic. It also did not define the term "use" or specify that it intended that term to mean "exclusive use," which it could have done by placing the word "sole" or "exclusive" immediately prior to the word "use." Moreover, the town acknowledges that the park is a public park and that the beach is a public beach,[13] and previously we discussed that public parks and public beaches exist for the benefit of the residents of the entire state. See *Hayden* v. *Noyes*, supra, 5 Conn. 397; *Merwin* v. *Wheeler*, supra, 41 Conn. 24; *Hartford* v. *Maslen*, supra, 76 Conn. 611; *Dawson* v. *Orange*, supra, 78 Conn. 119; *Conners* v. *New Haven*, supra, 101 Conn. 194–95; *Epstein* v. *New Haven*, supra, 104 Conn. 284; *Winchester* v. *Cox*, supra, 129 Conn. 111; *Fenwick* v. *Old Saybrook*, supra, 133 Conn. 29–30; *Hiland* v. *Ives*, supra, 154 Conn. 690; *Torrington* v. *Coles*, supra, 155 Conn. 201; *Stradmore Development Corp.* v. *Commissioners*, supra, 164 Conn. 551; *Luce* v. *West Haven*, supra, 238 Conn. 691 (*Berdon, J.*, concurring).

If the legislature intended the town's bathing beaches to be either nonpublic or for the sole use of the town's residents, or both, the legislature could have so stated. Certainly, the legislature is capable of providing explicit language when that is its intent, and here there is no explicit language abrogating the public trust doctrine.

---

[13] The ordinance refers to the park as a "public park" and to the beach as a "public beach." The town, in its brief, refers to the beach as a "public beach." We agree that the park and beach are properly characterized as "public."

Because the act is devoid of such explicit language, we will not presume that the legislature intended it to operate in derogation of the doctrine. See *Glastonbury Co.* v. *Gillies*, supra, 209 Conn. 179 (court may not read into statutes provisions not clearly stated therein); *Local 218 Steamfitters Welfare Fund* v. *Cobra Pipe Supply & Coil Co.*, 207 Conn. 639, 645, 541 A.2d 869 (1988) (court may not impute to legislation language not clearly intended); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 571, 512 A.2d 893 (1986) (legislature's intent derived "not in what it meant to say, but in what it did say"). We should not read into clearly expressed legislation an intent that does not find expression in its words. *Gomeau* v. *Forrest*, 176 Conn. 523, 527, 409 A.2d 1006 (1979); *Houston* v. *Warden*, 169 Conn. 247, 251, 363 A.2d 121 (1975). Because the legislature did not intend to modify the public trust doctrine through passage of the act, the principles of justice on which the common law is founded should be perpetuated. See *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 291–92, 627 A.2d 1288 (1993).

Because we are persuaded that the language of the act is clear and unambiguous, and that nothing in its language expressly overrides the public trust doctrine, we may not examine the act's legislative history, the circumstances surrounding its enactment or the policy it was intended to implement. *Caldor, Inc.* v. *Heffernan*, supra, 183 Conn. 571. Accordingly, we conclude that the act did not abrogate the public trust doctrine and that the doctrine, therefore, should have been applied to the facts of this case.

C

Having concluded that it was improper as a matter of law for the court to decline to apply the public trust doctrine to the facts of this case, we next address whether the court improperly concluded that the plain-

tiff failed to satisfy his burden of proving that the ordinance violates public policy and the public trust doctrine. We hold that the plaintiff satisfied his burden of proving beyond a reasonable doubt[14] that the portions of the ordinance limiting access to the park and beach to only the town's inhabitants are void as violative of public policy and the public trust doctrine.

We begin with the assumption that the ordinance is valid. See *Pollio* v. *Planning Commission*, 232 Conn. 44, 49, 652 A.2d 1026 (1995). The ordinance is valid, however, only to the extent that it is consistent with the power delegated to the town through the legislature's passage of the act. See *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 82, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994), citing *Bishop* v. *Board of Zoning Appeals*, 133 Conn. 614, 619, 53 A.2d 659 (1947) ("ordinance must rest primarily upon the enabling act and *must not go beyond the power delegated by it*" [emphasis added]). The town may not enlarge a grant of power from the legislature. *Baker* v. *Norwalk*, 152 Conn. 312, 318–19, 206 A.2d 428 (1965).

Portions of the ordinance exceed the power granted to the town in the enabling legislation, and the offensive portions of the ordinance are, therefore, invalid. As we discussed previously, the town is required to allow state residents the same access to its public beaches and public parks as it offers to its residents. The ordinance, however, discriminates against state residents who are not town residents as to access to its public beaches and public parks because it provides that "*only inhabitants of the Town* may enter, remain upon or use [the town's] *parks* . . . . [and] *public beaches*." (Emphasis

<hr>

[14] *Pollio* v. *Planning Commission*, 232 Conn. 44, 49, 652 A.2d 1026 (1995) ("presumption of validity is accorded to municipal ordinances [and] invalidity [must be] established beyond a reasonable doubt").

added.) This language, as well as all other language in the ordinance discriminating against residents of this state who are not inhabitants of the town, violates public policy and the public trust doctrine and is, therefore, invalid.

The court was presented with evidence that the public trust doctrine and the public policy of this state render the town's ordinance invalid. On the basis of our analysis of the impact of those doctrines on the facts of this case, we hold that the court could not reasonably have concluded that the plaintiff failed to establish beyond a reasonable doubt that the ordinance is invalid. Accordingly, we conclude, as a matter of law, that the plaintiff sustained his burden of proving beyond a reasonable doubt that the ordinance is invalid.

II

We will next address the concerns of the association. The association argues that the easement it granted to the town in 1945 will be overburdened if this court grants the relief requested by the plaintiff. It also asserts that opening the beach to nonresidents will have a negative environmental impact on the park and the surrounding property. The association finally asserts that its private property interest in the access road "trumps" any rights the plaintiff may have to access the park.

As to the first issue, the court found unpersuasive the association's argument that the easement would be overburdened. The court found, inter alia, that because the right-of-way already is at maximum capacity on many occasions during summer months, the burden on the easement "cannot increase [because it] is already burdened to the maximum extent possible." This ruling was not clearly erroneous in light of the facts found by the court and was based on a correct application of the law to those facts. We therefore agree with the court's ruling as to that issue.

As to the second issue, the court found that if the park is "open to the public without restriction, there would be a significant negative environmental effect on the [park] and the surrounding area." The court, however, did not rule on this issue, concluding that "[w]hether this type of environmental concern can override certain constitutional rights is an issue saved for another day." Accordingly, we do not reach this issue.

As to the third issue, the court found that "the [association] has proved . . . that the easement [was granted] with the intention that only [town] residents (and their guests) use the easement." The court did not reach the issue of the effect of this intention on the plaintiff's claims. Moreover, the plaintiff argues that because the association did not raise the issue of the infringement of constitutionally guaranteed property rights in the trial court or request an articulation on this point, that claim can not be reviewed by this court. We agree with the reasons set forth by the plaintiff. Additionally, because the trial court did not reach this claim, we do not reach it.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff.

In this opinion the other judges concurred.