HUMPHREY SISSON AND WALTER FOX, RESPONDENTS, *v.* PETER CUMMINGS AND OTHERS, APPELLANTS.

*Riparian owner — right of, to use land between high and low water-mark — right to maintain ejectment against an intruder — inconsistent findings of fact and conclusions of law by a judge or referee — proper practice as to the preparation of the decision of the judge or referee.*

The owner of land bordering on waters where the tide ebbs and flows, or on inland navigable waters where the tide does not ebb and flow, has a legal right to possess and occupy the land between high and low water-mark, subject, however, to the right of the State to take the land for its own use, or to authorize it to be taken by a corporation for public use, and also subject to the right of the public to use it in aid of navigation.

This legal right is a sufficient title to enable such owner to maintain ejectment against an intruder upon lands lying partly above and partly below high water mark, where the lands above and below are embraced in the same action and recovered in the same judgment.

The rule which is to be applied where a contradiction exists between the findings of fact and conclusions of law appearing in the decision, signed by the judge or referee, and the findings made upon special requests therefor submitted by either of the parties, considered, and the old rule that in such cases the special findings is to control, criticised and doubted. (Per FOLLETT, J.)

The proper manner of preparing the findings of fact and conclusions of law which are to be signed by the judge or referee and filed as his decision, stated. (Per FOLLETT, J.)

APPEAL from a judgment in favor of the plaintiffs, entered upon the trial of this action by the court without a jury.

*Wayland F. Ford,* for the appellants.

*O'Brien & Emerson,* for the respondents.

FOLLETT, J.:

The plaintiffs brought this action, ejectment, to recover a narrow strip of land lying between Otter creek bay and the westerly line of land owned and occupied by the defendants. The action was tried before the court without a jury, resulting in a judgment for the plaintiffs. The defendants appeal.

Otter creek flows into the St. Lawrence river, forming at its

mouth Otter creek bay, part of which is of considerable depth and navigable. February 18, 1851, John W. Fuller became the owner in fee of four and $\frac{18}{100}$ acres of land under a grant, which describes the south-westerly boundaries of the parcel as follows: "To a point on the margin of the river and bay, thence along said margin of said bay southerly, south-easterly, north-easterly and south-easterly to the place of beginning." July 5, 1861, Fuller conveyed $\frac{19}{100}$ of an acre of it, of the above parcel, to David and Willard Woodworth, which is described by the following diagram, 1, 2, 3, 4:

The description begins at station No. 1 of the diagram, and runs thence south forty degrees west one chain and twelve links to station No. 2; thence north fifty degrees west one chain and seventy links to station No. 3; thence north forty degrees east one chain and twelve links to station No. 4; thence south fifty degrees east one chain and seventy links to station No. 1, containing nineteen one-

hundredths of an acre of land, be the same more or less.. Then follows the following reservation : " Expressly and especially reserving to the said John W. Fuller, and his heirs and assigns, all his rights to the land now under water, and to the water front beyond, or south-west of the above described line."

March 4, 1862, Willard Woodworth conveyed his undivided half of the nineteen one-hundreths of an acre to David Woodworth.

June 21, 1870, David Woodworth conveyed to the plaintiffs the part of the nineteen one-hundredths of an acre which is described by the small diagram, A, B, C, 3, which the plaintiffs now own.

January 20, 1870, the heirs of John W. Fuller conveyed to John T. Fuller the four and thirteen one-hundredths of an acre piece ; by the same description contained in the deed to John W. Fuller ; excepting therefrom the lot conveyed to David and Willard Woodworth as above, and three other small lots, which need not be described, as those grants do not affect the rights of the parties to this action.

January 20, 1870, John T. Fuller conveyed the land described in the deed to him, and by the same description contained in his deed, to Martin J. Hutchins and Andrew C. Cornwall.

January 24, 1870, Hutchins and Cornwall conveyed the land described in the deed to them, and by the same description contained in their deed, to the plaintiffs who now own the lot.

November 10, 1871, David Woodworth conveyed to Ellen Cummings the part of the land described by the diagram, 1, 2, C, B, A, 4, and described in the grant as follows: Beginning at station 1 ; thence south-westerly one chain and twelve links to station 2 ; thence north-westerly one chain and thirty-five links to station C ; thence north-easterly thirty links to station B ; thence north-westerly thirty five links to station A ; thence north-easterly eighty-two links to station 4 ; thence south-easterly one chain and seventy links to station 1, containing eighteen-hundredths of an acre.

January 31, 1875, Ellen Cummings died intestate, and the lot last described descended in fee to Cecilia and James Cummings, her children, who are two of the defendants in this action, subject to the life estate of Peter Cummings, one of the defendants, the husband of Ellen Cummings, as tenant by the curtesy. The com-

plaint alleges that the defendants, or some of them, claim to own this strip of land. The infants, by their answer, do not deny this allegation. Neither was it denied on the trial that they claimed to own this strip. Under this state of facts, the infants are proper parties defendants under sections 1502 and 1503, Code of Civil Procedure.

Under these conveyances it is clear that whatever land lies westward of the line between stations 2 and C, and eastward of the shore line or high water-mark of Otter creek bay, belongs to the plaintiffs. That it was the intention of the parties to the deed, from Fuller to the Woodworths, not to include within the grant the bay or its shore, is apparent from the terms of the grant, which does not extend to the shore, but is bounded by a definite line which has no reference to the shore, and also from the evidence outside of the grant. At the date of this grant the grantor occupied the shoal waters of the bay for storing logs, and the shore for wharfing purposes, which occupation continued uninterruptedly for many years. The obvious intention of the parties being to except from the operation of the grant the land lying between the line from station 2 to station 3 and the shore of Otter creek bay, the use of the word "reserving," instead of the more appropriate word "excepting," does not invalidate or limit the effect of the clause. (*Bridger* v. *Pierson*, 45 N. Y., 601; S. C. on retrial, 66 Barb., 514; *Langdon* v. *The Mayor*, 6 Abb. N. C., 314; *State* v. *Wilson*, 42 Me., 9; *Whitaker* v. *Brown*, 46 Pa. St., 197; *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass., 290, 321; Wash. R. P., book 3, chap. 5, §.4, p. 57; vol. 3 [4th ed.], 431.) The decision signed and embraced within the judgment-roll does not clearly state the quantity of land between the line of high water and line 2, 3, but it does appear from the facts found in the decision that there is some land between these lines. The finding speaks "of a strip of land and land under water," lying between line 2, 3, and the line of low water.

The fair construction of this language is, that the term "land under water" refers to land between high and low water marks; and the term "a strip of land" to that lying between the line of high water and line 2, 3. The evidence discloses the existence of buildings on land westerly of line 2, 3, the uses of which are incon-

sistent with the idea that they stand between high and low water mark. The effect of this finding is, that there is land lying between line 2, 3, and the line of high water.

The conclusion of law follows the finding, and awards judgment for the recovery of all of the land between line 2, 3 and the line of low water mark in Otter creek bay. It appears from the case that the defendants preferred requests to find facts and conclusions of law pursuant to section 1023 (Code Civil Pro.), which the court disposed of by marking " found " and " refused," in accordance with the determination made of the various requests. The facts and conclusions of law which were marked " found " were not incorporated into the decision signed, nor are they contained in the judgment-roll, but appear in the case as settled.

If the determination of the requests to find can be resorted to by this court to enlarge, limit, contradict or explain the findings contained in the decision signed, then it is negatively found that there is land between line 2, 3, and the line of high water. The defendants, by the eleventh and fourteenth requests, asked the court to find that there was no land between line 2, 3, and the line of high water, which requests are marked " refused." The defendants preferred the following request, which is marked " found " : " 13. That the plaintiffs have shown no title in themselves to the land between high and low water mark along the shore line of the bay and river."

The defendants insist that this finding is inconsistent with the finding of fact in the decision signed (above referred to), and with the conclusion of law that the plaintiffs are entitled to recover the land between the line 2, 3 and the line of low water. To this conclusion of law, and to the finding of fact contained in the decision, the defendants excepted. The defendants insist that when the findings of fact contained in the decision signed are inconsistent with the findings, without the decision, made in response to requests, the latter control. The following cases support this proposition: *Tompkins* v. *Lee* (59 N. Y., 662) ; *Phelps* v. *Vischer* (50 id., 69) ; *Bennett* v. *Buchan* (76 id., 390) ; *Schwinger* v *Raymond* (83 id., 192) ; *Bonnell* v. *Griswold* (89 id., 122).

The first two cases arose under the old Code, which allowed additional findings to be made on the settlement of the case. Under

the present Code a court or referee is without power to make additional findings after rendering the decision. (*Gormerly* v. *McGlynn*, 84 N. Y., 284.) The later cases cited arose under the new Code, but they follow the earlier cases without discussing the effect of the new Code upon the practice. The new Code provides : " The decision of the court or the report of the referee upon the trial of the whole issue of fact must state separately the facts found and the conclusions of law; and it must direct the judgment to be entered thereupon." (Code Civil Pro., § 1022.) The decision or report must be in writing and filed. (Code Civil Pro., §§ 1010, 1019.) This language seems inconsistent with the idea that facts found can be stated elsewhere than in the decision or report. When all of the requests have been passed on, the judge, referee or the attorney of the successful party should draft findings of fact and conclusions of law, embracing all found and excluding all not found. If requests are not passed on, they and the exceptions taken will appear in the case. If facts found may be stated outside of the decision or report, so may conclusions of law ; and it is difficult to see why either should be. The evils of this practice are forcibly illustrated in this case, and the practice should not be tolerated unless it is expressly authorized by the Code. Inconsistent findings or conclusions seldom occur in decisions or reports deliberately examined and signed, but frequently when stated without the decision or report. A question of fact stated in the decision or report is often found stated in the case in different language, in a different connection, and capable of a different construction, which creates confusion, tends to prolong the litigation, and renders the final decision uncertain. But having regard to the situation of this question under the cases cited, it ought not to be determined until an absolute necessity for a determination arises, and after deliberate argument by counsel.

The thirteenth finding, above quoted, is a conclusion of law, rather than a finding of fact. It arises on the construction of the deeds and the law applicable to the rights of owners of land bordering on navigable waters. It is found outside of the decision signed : " (4.) That in the river St. Lawrence for a long distance from its mouth, the oceanic tide ebbs and flows."

Whether the tide ebbs and flows in Otter creek bay, or in the

St. Lawrence river at this point, is not directly stated in the evidence, though the witnesses in speaking of high water invariably attributed it to other causes, and the court may well take judicial notice that the tide does not ebb and flow above the rapids in this river. However this may be, this question is not a material one, as the owner of land bordering on waters where the tide ebbs and flows, or on inland navigable waters where the tide does not ebb and flow, has a legal right to possess and occupy the land between high and low water mark, subject, however, to the right of the State to take the land for its own use, or to authorize it to be taken by a corporation for public use, and also subject to the right of the public to use it in aid of navigation. The adjoining owner may occupy to low water mark for watering his stock, drawing water for irrigation or manufacturing ; he may build wharfs or occupy the land for any private purpose not inconsistent with the rights of the public. (*People* v. *Tibbetts*, 19 N. Y., 523 ; *East Haven* v. *Hemmingway*, 7 Conn., 186, 203 ; *Blundell* v. *Catterall*, 5 B. & Ald., 268.) This legal right of an adjoining owner is a sufficient title to enable him to maintain ejectment against an intruder upon lands above and below high water mark, when the lands above and below are embraced in the same action, and recovered in the same judgment. (*Nichols* v. *Lewis*, 15 Conn., 137 ; *People* v. *Mauran*, 5 Denio, 389 ; *Jackson* v. *Buel*, 9 Johns., 298 ; *Jackson* v. *May*, 16 id., 184 ; *Brown* v. *Galley*, Hill & Denio, 308.)

It was competent for the plaintiff to show that his grantors had occupied this land above and below high water mark for a series of years. (*The Duke of Beaufort* v. *The Mayor*, 3 Exch., 413 ; *Rowe* v. *Brenton*, 3 M. & R., 329.) No error was committed calling for a reversal of this judgment.

The judgment is affirmed, with costs.

HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs.