NICHOLS and another *against* LEWIS.

*Fairfield*,
June, 1842.

Nichols
*v.*
Lewis.

| 15 | 137 |
| 58 | 152 |
| 15 | 137 |
| 71 | 38 |

Where a testator devised a parcel of land, from a larger tract lying on the *West* side of a harbour, describing such parcel as bounded "*East* on the harbour at the foot of the bank ;" in an action of ejectment brought by *A*, who claimed under a devisee of that part of the tract not devised to *L*, against *B*, who claimed under *L*, it was held, 1. that parol evidence of the character and face of the land in controversy, was admissible, to show, in connexion with the language of the will, what line the testator intended, as the *Eastern* boundary of the land devised to *L* ; 2. that the jury having found, under the direction of the court, that the only bank on this side of the harbour, was a steep bank about ten feet high, from the bottom of which the land gradually sloped away *Eastwardly* to the channel of the harbour, and that a part of such land lay between the foot of the bank and ordinary high water mark, and thereupon found, that the *Eastern* boundary of the land devised to *L*, was the line at the foot of the bank, the verdict was right.

Where it appeared, in such case, that *B* had filled up a portion of the mud flats, between the foot of the bank and the channel of the harbour, claiming a right to do so, as riparian proprietor ; it was held, that *A* was not precluded from recovering that portion of the flats thus filled up, on the ground that the freehold was not in *A*, but in the state.

Where the property sought to be recovered is tangible, and an entry can be made, and possession can be delivered by the sheriff, ejectment will lie.

Land below high water mark being of this description, the right of the riparian proprietor therein, may, therefore, be vindicated, against a disseisor, in this action.

THIS was an action of ejectment for a parcel of land in *Bridgeport*, lying *West* of the *Pequonnuck* river.

The cause was tried at *Fairfield*, *February* term, 1842, before *Sherman*, J.

The parties both claimed title to the land in question under the will of *Philip Nichols*, who died in 1807. At the time of making his will, and until his death, he owned a large tract of land, lying in the present town of *Bridgeport*, above the bridge, on the *West* side of the harbour, embracing the land in controversy. By his will he devised to his three daughters, one of whom was *Lucy Shelton*, a part of this land, bounded "*East* on the harbour at the foot of the bank ;" and the residue of his lands to his two sons, of whom the father of the plaintiffs was one. In the distribution, a part of the tract given to the daughters was set out in severalty to *Lucy Shelton* ; and all her title is now vested in the defendant. By the same distribution, the land lying *East* of *Lucy Shelton's*, and

Nichols
*v.*
Lewis.

bounded by it on the *West,* was set out in severalty to *George R. Nichols,* the father of the plaintiffs, who are his heirs.

There was a steep bank around this part of the harbour about ten feet high. From the bottom of that bank *Eastwardly* the land gradually sloped away until it met the channel of the *Pequonnuck* river, which was the channel of the harbour. Much of this flat land was covered by all the tides of the sea; and the high spring tides extended to the foot of the bank.

The plaintiffs claimed, that there was no other bank; and that they owned all the land *East* of it to the ordinary high water mark, with the right of wharfing out.

The defendant claimed, that his land extended to the channel of the harbour; that his *Eastern* boundary was *East* of the foot of the bank; and that he was entitled to the use of what lay between said boundary and the channel, as appurtenant to his land, for the purpose of erecting wharves, &c.

The court charged the jury as follows: " By law, land below ordinary high water mark, belongs to the public, until it is appropriated, by the adjoining proprietor, to the erection of wharves, &c.

" The proprietor, whose land adjoins the tide waters of the sea, or the arms thereof, at ordinary high water mark, has the right of erecting wharves, &c., for his accommodation, provided they do not annoy the public right of navigation. You will first ascertain the defendant's *Eastern* boundary, as described in the will. The language of the will, in designating this boundary, is, ' *East* on the harbour at the foot of the bank.' The defendant contends, that it is on the shore of the channel; that the ' foot of the bank,' used in connexion with the words, ' on the harbour,' intended to include, at least, all the land to high water mark, extending to the border of the public property. The plaintiffs insist, that there is no bank, answering to the description in the will, except the bank about ten feet high stated in the testimony; that bounding 'on the harbour at the foot of the bank,' may all be reconciled, if you suppose that, by harbour, the testator meant grounds contained within the high natural banks; which grounds, it is admitted, are overflowed by all the high spring tides; and no other other bank has been spoken of, by any witness. You are to ascertain what line the testator intended as the *Eastern*

boundary of the land devised to his daughters, by his language, by the character and form of the place of which he speaks, and the other testimony relating to it. If you find the *East* boundary of the land devised to the daughters to be as far *East* as ordinary high water mark, as claimed by the defendant, then the plaintiffs have no title.   But if you find the line at the foot of the bank, as claimed by the plaintiffs, to be the true *Eastern* boundary of the defendant's land, you will then inquire, whether there was, at the death of *Philip Nichols,* any land *East* of that, and above ordinary high water mark. If *Philip Nichols* then owned land of that description, he might devise it ; and the plaintiffs are entitled to it, as heirs to their father.

*Fairfield,*
June, 1842.

Nichols
*v.*
Lewis.

"Adopting these principles, you will find the issue for the plaintiffs, if there is land *East* of the defendant's boundary, and above ordinary high water mark.  But if there be no land *East* of said boundary, above ordinary high water mark, you will find the issue for the defendant.   If you find for the plaintiffs to recover less than the land demanded in the declaration, you will describe, in your verdict, the portion which they are entitled to recover."

Before the institution of this suit, the defendant had filled up a portion of the mud flats, between the foot of the bank and the channel of the harbour, claiming title, and that he had a right to do so, as riparian proprietor.    The plaintiffs claimed to recover of the defendant that portion of the mud flats so filled up between the land above ordinary high water mark and the channel.   The defendant insisted, that the plaintiffs could not recover this part of the mud flats ; and requested the court so to charge the jury.    But the court did not charge the jury on that point, otherwise than as above stated.

The jury returned a verdict for the plaintiffs to recover of the defendant the seisin and peaceable possession of a tract of land, part of the demanded premises, bounded *Eastwardly,* on the embankment of the *Housatonic  Rail-road Company,* the *Easterly* side of said embankment being at high water mark ;  *West,* on land in possession of the defendant, by the foot of the bank, at the line designated in the last will of *Philip Nichols ; Northerly,* on the extended *Northern* boundary line of land designated in the distribution of the estate of *Philip Nichols,* as a building-lot at *Bridgeport,* which was

*Fairfield,*
*June, 1842.*

Nichols
*v.*
Lewis.

set to *Lucy Shelton,* said line being extended *Eastwardly* to the *Eastern* side of said embankment at high water mark; and *Southwardly,* on the dividing line between the mud flats distributed to *George R. Nichols* and the mud flats distributed to *Sarah Clark,* in said distribution.

The defendant moved for a new trial for a mis-direction.

*Dutton* and *Loomis,* in support of the motion, contended, 1. That the court should have charged the jury, that the language of the will of *Philip Nichols,* bounding the defendant " on the harbour at the foot of the bank," by a reasonable construction, carried the defendant's title to high-water mark. In the first place, such a construction is to be put upon this devise as will give the devisee the greatest privilege which the language of the will will bear.   1 *Sw. Dig.* 234. Rule 51. Secondly, the harbour spoken of, is admitted to be the harbour of *Bridgeport.*   Now, must not land bounded *on* the harbour, reach *to* the harbour ?   *On* implies *contact.*   Thirdly, the construction of the expression " *on* the harbour," is not restricted, by the subsequent expression " at the foot of the bank."   A bank is that space between the upland and the edge of the water.   To reach the foot of the bank, then, you must, of necessity, go down to the water.   The court virtually instructed the jury, that they might find, that the defendant's land did not reach to the water's edge, or to the harbour; and that they might, therefore, find any quantity of land, between the harbour and the defendant's land.   This was erroneous.

2. That the action of ejectment will not lie in this case. The court charged the jury, that the plaintiffs might recover all the land filled up, by the defendant ; much of which, it is admitted, embraces the portion of land between high and low water mark.   The title of the king, *prima facie,* to all parts and arms of the sea to high-water mark, and to the soil thereof, has long been established.   *East-Haven* v. *Hemingway,* 7 *Conn. Rep.* 186. 198. and cases cited *ibid.*   *Chapman* v. *Kimball* & al. 9 *Conn. Rep.* 38.    3 *Bla. Com.* 206. *Bul. N. P.* 99.    *Challenor* v. *Thomas, Yelv.* 143.    *Molineux* v. *Molineux, Cro. Jac.* 146.    *Herbert* v. *Laughluyn, Cro. Jac.* 492. *Waddy* v. *Newton,* 8 *Mod.* 278.    To enable the plaintiff

to recover in this action, he must have right to exclusive possession.

*Fairfield,*
June, 1842.

Nichols
*v.*
Lewis.

*Bissell* and *Booth*, contra, contended, 1. That the charge of the judge as to the construction to be given to the will, was correct. The intent of the testator is to govern; and the character and form of the property devised, must be inquired after, to ascertain that intent. 2 *Phil. Ev.* 1399. 1400. by *Cowen* and *Hill.* 4 *Kent's Com.* 534, 5.

2. That proprietors of land adjoining the sea and navigable rivers own to high-water mark, at ordinary tides. *Hale de Jure Maris*, c. 4. (*Harg. L. T.* 12. 13.) 7 *Conn. Rep.* 198. 3 *Kent's Com.* 344. *Co. Litt.* 261. *a.* n. 205. by *Butler.*

3. That the plaintiffs are entitled to recover all the land above high water mark between their *Western* boundary and the channel. The right of an adjoining proprietor to fill up and reclaim between high and low water mark, is *exclusive.* 7 *Conn. Rep.* 202, 3. 9 *Conn. Rep.* 41. 1 *Sw. Dig.* 112. 2 *Bla. Com.* 262. The defendant cannot take advantage of his own wrongful act.

4. That the plaintiffs have something more than an easement in the subject of controversy. They have a strictly *legal title* in it; and ejectment will lie for its recovery.

WILLIAMS, Ch., J. The plaintiffs' claim resting upon the title of their ancestor to the residuum under this will, it is necessary to determine what the defendant can claim by the devise to *Lucy Shelton.* The *Eastern* boundary of her land is described in the will as " *East* on the harbour at the foot of the bank;" and the precise question is, where does this description carry her land? The plaintiffs say, to the foot of the bank: the defendant says, to the waters of the bay or harbour. The plaintiffs say, that the bounds are fixed at the foot of the bank; and the jury have found there was land beyond that bank, before you come to what may be termed *the shore.* The defendant says, the word " harbour" is definite, intelligible and leaves no ambiguity, and so must govern. What then are the court to do? They are bound to construe a will according to the intent of the testator; to give effect to that intent, if consistent with legal principles; and to give a meaning to every part of a description, if practicable. Upon

HARVARD LAW LIBRARY

*Fairfield,*
June, 1842.

Nichols
*v.*
Lewis.

the face of the will, the court see no ambiguity. They, there-fore, cannot say, but these descriptions come to one and the same point. But the parties say, they do not. The court, then, can only inquire as to the facts regarding these descrip-tions; where did the testator mean to place this *East* bound-ary? For parol evidence is always admissible to explain a latent ambiguity, and to locate lands and monuments referred to as boundaries. *Storer* v. *Freeman,* 6 *Mass. Rep.* 435. 440.

It is said, there is no ambiguity here; the harbour is a defi-nite object, as much so as a river; and it must mean the wa-ter, as much as if the river had been the boundary. And a definite boundary being given, it is said, you are seeking one more indefinite. This description of the boundary is to be taken together. If it is possible, each part must have its due effect. Now, the defendant would have it read just as if the latter words were left out—" at the foot of the bank,"—so as to suppose the devisor meant nothing by them. And if the defendant is right in his construction, they are to mean no-thing. But if we are to give effect to the intent, and to give weight to every word of the testator, we may read it thus—bounded on the harbour,—that part of the harbour which lies at the foot of the bank. Now if, as is not uncommon, the lands about a bay are called *harbour,* as well as the bay itself, we give effect to every expression in the will, particularly the last words, upon this subject evidently intended to con-troul the generality of the former, and to render it more defi-nite. Now, if the testator had said, *East* on the harbour along a line of rocks, on the top of these rocks; and it was shewn, that the water never came to the foot of these rocks, but there was land sometimes cultivated below, could there be a doubt of his meaning, or the right to show it? The proof here is of the same kind. A bank ten feet in height, at the foot of which is a piece of land, before you reach the shore, so called, and bounded on the harbour, at the foot of the bank; as if he had said, *East* on the harbour; but lest it should be misconstrued, I mean by the expression "on the har-bour," that part of the harbour, which is at the foot of the bank. This is what is substantially said, by the verdict of the jury, under the direction given; and much of the argument on the part of the defendant, might be addressed to the jury; though,

so far as the testimony is stated, we think the jury came to a correct result ; and we can see no objection to the charge. Where a grant of land is made to a highway, it will carry it to the centre : but if it is added, to the *side* of the highway, this will controul it. *Jackson* d. *Yates* & al. v. *Hathaway*, 15 *Johns. Rep.* 447. 454. And when a deed is to the *bank* of a stream, the stream is necessarily excluded. *Hatch* v. *Dwight* & al. 17 *Mass. Rep.* 289. 298, 9. We think here, that the devisor never intended that this land should reach the waters of the harbour or the shore adjoining.

The defendant further claims, that for that part of the land filled up in the flats, the plaintiffs can have no right to recover ; and he says, the legal title is in the state, and not in the plaintiffs ; and if the plaintiffs have a right, this action will not lie.

As to the first objection, that the land between high and low water mark belongs to the public ; this has not been denied. Nor has it been denied, that the adjoining proprietor may fill it up, or reclaim it, for the purpose of erecting wharves, not impeding navigation. The defendant, however, insists, that when done, the plaintiffs are not the owners of the soil, but the state is owner. Now, although the state *prima facie* is owner of the shore on the sea-coast ; yet, we think, that if a wharf is legally erected thereon, it cannot be maintained, that the freehold is not in the hands of the proprietor. The law which permits him to build a wharf there, not injurious to the public interest, surely does not consider him as without interest in the soil ; and wherever there is an interest in the soil, this action will lie : as in the case of a boilery. *Smith* v. ———, 1 *Lev.* 114. Or a fishery. *The King* v. *Old Alresford*, 3 *Term Rep.* 358. And if this action cannot be supported, he is left remediless as it respects an insolvent disseisor. We think the title must be in him, subject to the right of the public to abate it, if it prove a nuisance.

The defendant further claims, that however it might be, had the plaintiffs filled up this flat ; yet, as the defendant has done it, the plaintiffs can claim no right to it. Now, if the plaintiffs, as adjoining proprietors, were the individuals who alone had the right to do this, and the defendant has done it, and by means of it, he, if permitted to enjoy it fifteen years, would gain a complete title against the plaintiffs, he cannot, we think, complain, if the plaintiffs are allowed to treat his

acts as done for them ; as if a man builds on another's land, the building belongs to the owner of the land ; and if the defendant chooses to put his wharf on property which the plaintiff alone can appropriate in that manner, we think the same principle will apply.

It is further said, that it does not appear, that this was done with the intent to erect a wharf, and so is not within the principle. It is enough to say in answer, that no such question was made below.

It was said, that Ch. J. *Hosmer* speaks of the rights of persons situated like the plaintiffs, as a mere *franchise ;* and therefore, this action cannot be supported, as it will not lie for an incorporeal hereditament. That rule is not universal ; and it has been held, that ejectment would lie for tithes. 2 *Wms. Saund.* 304. n. 12. And for common appurtenant. *Mellington* v. *Goodtitle, Andrews,* 6. 8.

The principal objection, in the *English* courts, to this action, where the plaintiff had the right, has been, that there was nothing tangible, upon which an entry may be made, or of which the sheriff could give possession. The latter objection has lately met with no particular favour. *Goodright* d. *Welch* v. *Flood,* 3 *Wils.* 23. But the rule now is, that where the property is tangible, and an entry can be made, and possession can be delivered to the sheriff, this action will lie. 2 *Leigh's N. P.* 823. *Jackson* d. *Loux* & al. v. *Buel,* 9 *Johns. Rep.* 298. *Jackson* d. *Saxton* v. *May,* 16 *Johns. Rep.* 184.

Here, the property is tangible ; and an entry may be made, and possession given.

The action, therefore, must be sustained ; and no new trial granted.

In this opinion the other Judges concurred.

New trial not to be granted.