THE LADIES' SEAMEN'S FRIEND SOCIETY *vs.* ANDREW C. HALSTEAD AND OTHERS.

New Haven & Fairfield Cos., Oct. T., 1889. ANDREWS, C. J., CARPENTER, LOOMIS, PRENTICE and J. M. HALL, Js.

Where a grantor conveys part of a tract of land to a purchaser, bounding him on his own remaining land, but it is left uncertain by the deed which of two lines was intended as the dividing line, a later grant to other parties of the remainder of his land by the same grantor, in which the dividing line is clearly stated to be the one of the two lines which gives to the first grantee more land than the other, is admissible in favor of the first grantee as an admission of the grantor against his interest.

Mud flats on the seashore between high and low water mark may be conveyed separately from the adjoining upland.

And they may be used by the owner for any purpose which does not interfere with navigation.

And where a portion adjoining the upland is reclaimed, it becomes upland for most if not all purposes.

An adverse occupancy of a portion of the flats belonging to the owners of the adjacent upland, is a disseizin of the owner as much as if it were upland.

Where land upon a highway that ran close along the shore and parallel with it, was conveyed, eight rods in depth and extending into the mud flats, but with the sides not at right angles to the highway, it was held

that the lines beyond the eight rods and extending to low water mark, ran at right angles to the highway.

[Argued October 23d—decided December 9th, 1889.]

ACTION to recover possession of real estate; brought to the Superior Court in New Haven County, and tried to the court before *Fenn, J.* Facts found and judgment rendered for the plaintiffs and appeal by the defendants. The case is fully stated in the opinion.

*J. W. Alling*, for the appellants.

*W. B. Stoddard* and *J. G. Clark*, with whom was *S. C. Loomis*, for the appellees.

CARPENTER, J. The matter in dispute is the boundary line between the plaintiff and defendants, adjoining owners of portions of the flats in the harbor of New Haven. They derive their respective titles remotely from the same grantors. In 1830 Henry Daggett, Elnathan Atwater, Abram Heaton and William Mosely owned the premises now owned by both parties, lying south of Water street. That street was originally two and one half rods wide, the south line of which was substantially the line of high water. Prior to 1830 the street had been widened by constructing a sea-wall one and one half rods below the high water line and reclaiming the land to that wall. Each party is bounded north by Water street. The contention relates to the boundary line between them.

November 26th, 1830, Henry Daggett and his associates deeded to the trustees of the estate of Eli Whitney a part of the premises now owned by the defendants, described as follows: "A piece of flats at the southerly side of Water street, in said New Haven, between Brown street and Wells street. The northwest corner is at the northeast corner of a wall or wharf belonging to the grantors, then run easterly by the south line of Water street, one hundred and ninety-nine feet more or less, to a point precisely against the pres-

ent east line of a lot," etc., "thence run southerly eight rods to the flats of said easterly division line, then run westerly parallel with Water street one hundred and ninety-nine feet, more or less, to a point eight rods southerly of the place of beginning, thence running north eight rods to the place of beginning; and so is bounded northerly by Water street; easterly on flats of the grantors; southerly on flats; and westerly part on flats of the grantors and part by the easterly side of their wall or wharf."

In 1834 another piece on the east of the above described premises was deeded to the same grantees. Subsequently the title to the above premises vested in one Mary M. Ward, and on the 30th day of December, 1869, she conveyed the same, with more, extending southerly from Water street five hundred and ninety-one feet, to Elihu Larkin and John W. Bishop. How the grantor obtained title to the south part of the premises conveyed does not appear. Afterwards Bishop, having acquired the interest of Larkin, conveyed the premises to the defendants. In the deeds from Ward to Larkin and Bishop, and from Bishop to the defendants, the premises are described as bounded on the west "by land and flats formerly belonging to Elnathan Atwater."

In September, 1831, Daggett and his associates deeded the flats west of the premises deeded to the trustees of the Whitney estate to George Rowland, described as follows:— "Begin at the northeast corner of Brown street slip, then run east by the south line of Water street one hundred and fifty-two feet to the west line of land and flats owned by Eli Whitney's heirs; then south by the line of said heirs eight rods; then west in a line parallel to and eight rods south of Water street, one hundred and sixty-two feet to the east line of Brown street slip; then northerly by the line of said slip eight rods to the place of beginning."

On the same day Rowland re-deeded said premises to the grantors, portions to each in severalty, the east portion to Elnathan Atwater, described as follows:—"Begin at a point one hundred and ten feet east from the northeast corner of Brown street slip, then run easterly by the south line of

Water street forty-two feet to the east side of the wall against flats or land owned by Eli Whitney's heirs, then southerly by the line of said heirs eight rods, then westerly in a line parallel to and eight rods south of Water street forty-eight feet, then north eight rods to the place of beginning."

Subsequently Atwater purchased a piece of Heaton, and the two pieces thus conveyed to him were conveyed by trustees to the plaintiff, February 25th, 1882.

The contention is as to the dividing line between the parties south of the eight rods limit. As we view the case that question must be determined mainly by the boundary line established by the deeds within the eight rods.

It will be observed that the defendants have a record title extending much more than eight rods south of Water street, namely five hundred and ninety-one feet, while the plaintiff's record title extends only eight rods. That fact however does not seem to affect the question, as we discover no claim by the defendants to any right in the flats west of their west line as described in the deeds, and the plaintiff's title is not questioned.

We come then to the test question, where is the dividing line between the parties for eight rods south of Water street? The question is even narrower that that; for it is conceded that from Water street it follows the east bank of the wall to its end—a distance of six rods. The real question then is this—in what direction does the line run from the south end of the wall? The plaintiff claimed that it was a straight line from Water street, following the course of the wall until it intersects the parallel line eight rods from Water street, and that it runs from that point on a line at right angles to Water street to the channel. The defendants claimed that the line deflected at the end of the wall and ran towards the channel at right angles to Water street from that point. The court sustained the plaintiff's claim and overruled the defendants'. The distance between the two lines eight rods from Water street is three feet and eight inches. The line contended for by the defendants

crosses the parallel line just one hundred and sixty-two feet easterly of the Brown street slip; and that is the southeast corner of the plaintiff's property as fixed by the deed to Rowland.

The two deeds from Daggett and others, one to Rowland, and one to the trustees of Eli Whitney's estate, are the important ones. Of these two the former is more specific. There is very little that is ambiguous or uncertain about that. The north, south, and west lines are definite as to courses and distances. The east line is definite as to distance, and the course for six rods is clearly shown by the deed to the Whitney trustees—along the east side of the wall. From the south end of the wall the course only is uncertain. The uncertainty however is slight, as it is nearly removed by the Rowland deed, which makes the south line just one hundred and sixty-two feet long. That makes it reasonably certain that the east line terminates at a point one hundred and sixty-two feet east of the Brown street slip. That construction is consistent with both deeds. The only criticism that can be made is that the east line is not perfectly straight. But there is nothing in the deeds necessarily requiring a straight line; while if the east line is straight it makes the south line three feet and eight inches longer than the deed requires; and that is more objectionable than the slight angle in the east line. Besides, the point in the parallel line one hundred and sixty-two feet from the Brown slip is definite and certain, as much so as any bound or monument could be. It is more reasonable that such definite boundaries and exact distances should control an uncertain course than that an uncertain course should extend distances and remove boundaries. We are therefore of the opinion that the court erred in so construing the deed as to make that south line one hundred and sixty-five feet and eight inches long. We think the line contended for by the defendants is the correct one.

In considering the demands of the deed of Daggett and others to Rowland, under which the plaintiff claims, and in giving a construction to it, we have not thought it necessary

to give a construction to the deed to the Whitney heirs under which the defendants claim; for the plaintiff must stand upon its own title, and not upon any want of title in the defendants.

But if it should be regarded as necessary to determine the exact location of the western line of the defendants' land, for the two rods below the end of the wall, then we feel no hesitation in regarding the deed of Daggett and others to Rowland as legitimate evidence on the subject. They were the same grantors who had ten months before conveyed the east lot to the Whitney heirs. If that conveyance did not carry their west line to the point now claimed by the defendants, then the land intervening between that line and the other more eastern one remained the property of those grantors; and when by their deed to Rowland they described the west line as the Whitney line, they were making an admission against their own interest, and conceding that that, which would otherwise be their own property, was the property of the Whitney heirs. This admission, in the absence of all other evidence on the subject, and in the uncertainty as to the location of that line by the deed to the Whitney heirs, might be decisive of the point.

But the defendants further claim that their right of wharfage commences on Water street at the plaintiff's northeast corner, and that their west line extends from that point at right angles with Water street to the channel. That would cross the parallel line ten feet further west than the corner as established by the deed. Pursuant to that claim the defendants have actually filled the flats to some extent up to that line south of the parallel line. Whether they had a right to do so is the next question in the case.

This claim is based largely on the assumption, which seems to be taken as conceded, that the filling of the flats by the plaintiff's grantors, near Water street, and east of the alleged line, was an encroachment upon the rights of the defendants' grantors; and upon that assumption the argument is urged, with much force, that a disseizor, by the act of dissiezin, can acquire no right still further to disseize. But as we under-

stand the record, the assumption is without foundation; consequently the argument fails. When the wall or wharf now on the plaintiff's premises was constructed, both estates were owned by the same parties; consequently there was and could have been no disseizin. The plaintiff, and those under whom it claims, had title, not by adverse possession but by deed. The deed in each case limits and determines the extent of the grant. The deed to the Whitney estate conveyed nothing south of the eight rods limit in terms; the deed from Ward to Larkin and Bishop, and also from Bishop to the defendants, conveyed simply a strip two hundred and eighteen feet wide, more or less, fronting on Water street, and five hundred and ninety-one feet, more or less, in depth; bounded westerly by "land and flats formerly belonging to Elnathan Atwater." That deed cannot be construed as conveying anything westerly of that line. The only implication must be in the direction of the channel. In some instances an incidental right to wharf to the channel may be conveyed by such deeds; but the grant will not be extended laterally.

We have assumed that these deeds were operative. In *Simons* v. *French*, 25 Conn., 346, it was held that the title to the upland and the appurtenant rights in the shore were separable, and that either might be conveyed without the other. In *Church* v. *Meeker*, 34 Conn., 421, the validity of a deed, given in 1828, of a portion of the shore, bounded by a highway as this is, where it did not appear that the grantor had any interest in the highway, or in the upland on the other side, was recognized. In *New Haven Steamboat Co.* v. *Sargent & Co.*, 50 Conn., 199, this court recognized and gave effect to the validity of a deed given in 1807 of the premises now in dispute south of Water street, by a committee of the proprietors of the common and undivided lands and the selectmen. The nature of the property in the shore suggests sufficient reasons why such deed should be considered operative. In *East Haven* v. *Hemingway*, 7 Conn., 186, it is described as ownership of the soil for the purpose of constructing wharves and stores thereon. In *Church* v. *Meeker* it is the right to cut sedge grass; and we suppose

the property may be used for any purpose which does not interfere with navigation. Like other property it may be alienated freely.

The contention that the Whitney deed, conveying premises abutting on the upland, conveyed the riparian right to reclaim the flats to deep water, and that that right is co-extensive with the line on Water street, is somewhat plausible. But manifestly no such intention was in the minds of the parties, as the express grant is limited to eight rods. It looks as though the principal thing regarded by them was the right to convert a portion of the shore into upland. At that place the land reclaimed is valuable mainly by reason of its frontage on the street. A wharf is valuable by reason of its frontage on deep water. It cannot be presumed therefore that a conveyance of a few feet of flats between the street and the wall carried with it any right on the channel, especially as a portion of the land and wharf of the grantors intervened. Suppose this wharf and land had been natural upland; in that event it will hardly be contended that the grantees' riparian rights would leap over that and attach itself to the flats between such land and the channel. Riparian rights ordinarily pertain to land nearest deep water to the exclusion of land at a greater distance. But portions of the shore lawfully reclaimed become upland for most if not all purposes. *Lockwood* v. *N. York & N. Haven R. R. Co.*, 37 Conn., 387 ; *New Haven Steamboat Co.* v. *Sargent & Co.*, 50 Conn., 199.

In the court below the defendants claimed " that the deposit of the material of which the wharf was built over their exact and true line of wharfage, but in the navigable waters of the state, between high and low water mark, was not a trespass, and that inasmuch as the plaintiff has not filled in the flats south of its lot, the fact that the defendants, or their grantors, in the exercise of their rights of wharfage, had encroached upon what would be the line of the right of wharfage belonging to the plaintiff, when it should come to exercise such right of wharfage, was not a disseizin of the plaintiff," etc. The court overruled this claim.

The acts of the defendants in depositing materials were done by them while exercising their own right of wharfage, and must be regarded as an assertion of a right which was inconsistent with, and an invasion of, the plaintiff's right. As such acts continued would ultimately deprive the plaintiff of its right, they must be regarded as legally wrong.

In *East Haven* v. *Hemingway*, 7 Conn., 186, this court held that the proprietor of land on navigable water has an exclusive right to the soil between high and low water mark for the purpose of erecting wharves and stores thereon. That right may be sold and conveyed by metes and bounds, and, so far as we know, is uniformly conveyed by deed executed with all the formalities required in deeds of real estate. Such property is in the nature of realty,—is in fact real estate; and when the owner's right therein has been invaded, and he has been dispossessed, it is trespass to real estate and disseizin. This point was expressly decided in *Nichols* v. *Lewis*, 15 Conn., 137. WILLIAMS, C. J., says in that case :—" Now although the state *prima facie* is owner of the shore on the sea coast, yet we think that if a wharf is legally erected thereon it cannot be maintained that the freehold is not in the hands of the proprietor. The law which permits him to build a wharf there, not injurious to the public interest, surely does not consider him as without interest in the soil; and wherever there is an interest in the soil, this action [ejectment] will lie."

There is error in the judgment appealed from, and it is reversed and a new trial granted.

In this opinion the other judges concurred; except PRENTICE, J., who dissented.