Ockerhausen et Ux. *v.* Tyson.

JOHN H. OCKERHAUSEN AND WIFE *vs.* HENRY H. TYSON.

Third Judicial District, New Haven, June Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and PRENTICE, Js.

The owner of land bounded on tide-water has a right to use this water
for access to his land, and for any other beneficial purpose for the
enjoyment of which his littoral title gives him peculiar opportu-
nities. He has, also, a qualified right of wharfing out, and of re-
claiming the mud flats in front of his upland by filling them in. The
extent of these rights and the manner of their exercise are, however,
to be determined by the rule, *sic utere tuo, ut alienum non laedas.*
Applying these principles to the present case it was *held* : —

1. That whatever might be the rights of the defendant, who owned
most of the land surrounding a small, crescent shaped, tide-water
cove in a navigable river or arm of the sea, and all of it that was
opposite the mouth of the cove and faced the channel of the river,
he certainly had no right, by virtue of such ownership, to fill up the
entire cove to the injury of the plaintiffs who owned the rest of the
land bounded thereon.

2. That all the land so made which adjoined the plaintiffs' upland and
lay within the limit to which their riparian right of wharfage or
reclamation extended, became an accession to their land precisely as
if they had made it.

3. That the non-exercise of the plaintiffs' right of wharfage or reclama-
tion did not impair or abridge it.

4. That the fact that the plaintiffs' land had a water front on the river
as well as upon the cove, did not lessen their rights in the waters
of the latter, or in the flats over which they flowed.

Argued June 7th—decided July 26th, 1898.

ACTION for damages and for an injunction restraining the
defendant from further filling up a cove adjoining the plain-

tiffs' land between high and low water-mark, brought to the Superior Court in Fairfield County and tried to the court, *Thayer, J.;* facts found and judgment rendered for the plaintiffs for one dollar damages, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The finding stated these facts: The plaintiffs owned a tongue of land, in Greenwich, one side of which was the northerly boundary of a small cove of the Mianus river. The cove was 113 feet deep, its mouth being 142 feet wide, on each side of which it extended north and south, as shown in the following figure.

The river was over 1,000 feet wide at the mouth of the cove and exclusive of the cove, and the channel of the river was 450 feet west of the mouth of the cove. The plaintiffs' land was bounded on the west by the river, and on the southeast and south by the cove, and by an ancient stone wall

running down to the northeast corner of the cove, on the other side of which fence the defendant owned, the upland of the latter surrounding all the rest of the cove.* This wall ran to high-water mark, and thence a lower stone wall ran continuously around the edge of the plaintiffs' upland, following high-water mark, to the point of the tongue on the north side of the mouth of the cove. The cove consisted of sedge and mud flats, and was subject to the ebb and flow of the tides. It was accessible at high tide to boats of very light draft, and by dredging might have made a safe and convenient place for keeping sailboats or a yacht.

The defendant, at the commencement of the action had begun to fill up the cove, and to wharf out by a substantial structure over its mouth into the river. The complaint alleged that the plaintiffs owned the right of wharfage from their land into the waters of the river and cove, and of ingress and egress by water to and from their land, and to have the tide ebb and flow over the land between high and low water mark, which was adjacent to their upland, and to reclaim the land so flowed, and to its products, and to all other rights and franchises in it belonging to them as riparian proprietors; and that the defendant was filling it in in such a manner as to interfere with or deprive them of these rights.. Their claims were for $2,000 damages, and an injunction.

Pending the action, the defendant went on and filled up the cove completely, to the line of high-water mark. The plaintiffs conceded that if they were entitled to damages, the amount should be nominal. The defendant claimed that if he had committed any wrong, the remedy in damages was adequate, and that an injunction ought not to issue requiring him to undo what had already been done; that the plaintiffs had no riparian rights as to the interior of the cove, but only those attached to their western frontage on the main river, with which it was not claimed that he had interfered;

---

* Whether the deeds under which they claimed title bounded them on high-water mark, or gave them the shore rights of their grantors, was a matter in dispute; but this point is sufficiently noticed in the opinion.

Ockerhausen et Ux. *v.* Tyson.

that at all events they had no riparian rights as to the interior of the cove that were superior to his, and none upon which he had trespassed; that if he had trespassed upon any such rights, damages could not, or at least, should not, be awarded in this form of action; and that on the facts found he was entitled to a judgment. The court overruled all these claims except the first, and rendered judgment for $1 damages, without any injunction.

*John H. Perry,* with whom was *John S. Pullman,* for the appellant (defendant).

This litigation relates to a trifling dent on the eastern shore of Mianus river or harbor, close to the eastern pier of the railroad bridge, near Riverside station. Any old traveler on the railroad, if he ever noticed it at all, remembers it as a mosquito kindergarten. It appears from the finding that the defendant's wrongdoing is somehow connected with the filling in of the entire indentation up to but not beyond the inside high-water line. A riparian proprietor in front of whose land no improvements have been made, owns no tangible property whatever, below or beyond ordinary high-water mark. *Chapman* v. *Kimball,* 9 Conn. 38, 40, 41; *Simons* v. *French,* 25 id. 346, 351; *Rowe* v. *Smith,* 48 id. 444, 447; *Lockwood* v. *N Y., etc., R. Co.,* 37 id. 387, 391; *New Haven Steamboat Co.* v. *Sargent,* 50 id. 199. See upon this point also *State* v. *Jersey City,* 25 N. J. L. 525; *New Jersey Z. & I. Co.* v. *Canal Co.,* 44 N. J. Eq. 401; *Stewart* v. *Fitch,* 31 N. J. L. 17; *Stevens* v. *Patterson & N. R. Co.,* 34 id. 532; *American Dock Co.* v. *Trustees, etc.,* 39 N. J. Eq. 446. We have, therefore, done no injury to any land which the plaintiffs owned or possessed. We are at least not guilty of trespass *quare clausum fregit.* The plaintiffs, however, claim the right of ingress and egress. It is not stated whence the ingress is to be from, or whither the egress is to be to. They still have perfect access to their land and egress from it at either end. The right referred to by them is not a right connected with the water or incident to their property as riparian land. It is a mere statement of the fact that no one can

put foot upon their upland whether out of a boat or a balloon, without their consent. *State* v. *Sargent*, 45 Conn. 357, 373; *Stevens* v. *R. R. Co.*, *supra*. The plaintiffs also claim the right to have the tide ebb and flow over their land between high and low water mark, but we can discover no such right as this laid down in our reports. *Chamberlain* v. *Hemingway*, 63 Conn. 1. The plaintiffs next claim " the right to the products of the same." The " products " of the *locus* were sedge and slime, with possibly an intermittent mussel. Neither (in the absence of adverse use, which is not alleged or found) belong to the plaintiffs. *Peck* v. *Lockwood*, 5 Day, 28; *Church* v. *Meeker*, 34 Conn. 421. The plaintiffs have no right of wharfage in the indentation whatever, and none of the other rights which they claim. The extension of the upland lines should intersect the lines of high and low water at right angles or substantially so. *Armstrong* v. *Wheeler*, 52 Conn. 428, 432; *Steamboat Co.* v. *Sargent*, 50 id. 208; *Welles* v. *Bailey*, 55 id. 292, 318; *Bond* v. *Wool*, 107 N. Car. 149; *Seamen's Friend Soc.* v. *Halstead*, 58 Conn. 150; *Lowndes* v. *Wicks*, 69 id. 29, 30. The angle at which they should leave the land or touch the channel is not always the same but they are *always straight throughout, they always run towards the channel, and they always start from a point or the front of the mainland* facing the channel.

*Julius B. Curtis* and *Louis J. Curtis*, for the appellees (plaintiffs).

The plaintiffs have an exclusive right to the soil between high and low water mark, for the purpose of erecting wharves and buildings thereon. *East Haven* v. *Hemingway*, 7 Conn. 186–203; *Simons* v. *French*, 25 id. 346; *Prior* v. *Swartz*, 62 id. 132. The plaintiffs have the right or franchise to dig out this cove for its more convenient use and to keep their yachts and boats in a convenient place. *Prior* v. *Swartz*, *supra*. The plaintiffs have the right and franchise to reclaim the flats in this cove; *Lockwood* v. *N. Y., etc., R. Co.*, 37 Conn. 387; and the filling in done by the defendant inures to the plaintiffs. *Nichols* v. *Lewis*, 15 Conn. 143. The

plaintiffs have also the right and franchise to pass to and from their uplands into and upon the waters of this cove. *Grand Rapids, etc., R. Co.* v. *Heisel,* 38 Mich. 172; *Chicago, etc., R. Co.* v. *Ayres,* 106 Ill. 511. In reclaiming these flats, situated between high and low water mark, the rights of the proprietors are limited to what is just, fair and reasonable. *Simons* v. *French, supra.* The same doctrine is substantially held in *Lyons* v. *Fishmongers' Co.,* L. R. 1 App. Cases, 662. The defendant has no right to go to the channel of Mianus river, nor was it the intention of his grantors that he should have any right in this cove by virtue of his deed. Even if the defendant had any interest or franchise in the cove directly west of him, would it not be a most unjust claim, that by virtue of such ownership he could go directly to the channel of Mianus river or harbor, thereby cutting off the plaintiffs from access to the river by means of the cove? Such a doctrine would prevent any owner of land lying on the side of any inlet or creek, from wharfing upon or reclaiming the same.

BALDWIN, J. Every owner of land bounded on tidewater has a right to use this water for access to his land, and for any other beneficial purpose for the enjoyment of which his littoral title gives him peculiar opportunities. He has also the right to extend his lands into the water by means of wharves, and a title by accretion to whatever lands by natural or artificial means are reclaimed from the sea; subject, however, to certain qualifications which need not be here detailed. *Mather* v. *Chapman,* 40 Conn. 382, 395; *Lyon* v. *Fishmongers' Co.,* L. R. 1 App. Cases, 662, 682, 683.

The plaintiffs' complaint is broad enough to found their action upon any and every right which they may have as riparian proprietors, whether those of a private nature or those having the character of a public franchise.

The rights and franchise of any such proprietor must, of course, be exercised at all times with due regard to whatever rights or franchises others may have; either general, such as those of navigation or fishery, enjoyed by the public under

the protection of the sovereign ; or special, such as those be-longing to adjoining proprietors, or derived from them.

The plaintiffs and the defendant were adjoining riparian proprietors on a tide-water cove of a navigable river or arm of the sea. The original deeds under which the defendant claimed, bounded him on high-water mark, but a later one from the grantor's heir, purported to convey to him the title to the shore ; and for the purposes of the appeal we shall consider him as invested with the full riparian franchise naturally appurtenant to his upland.

The cove was a small one, somewhat resembling in form a shallow vase or bottle, the mouth being less than a hun-dred and fifty feet in width. Most of the land by which it was surrounded belonged to the defendant, and all that which was opposite its mouth and faced the channel of the river.

The plaintiffs' land had a water front westerly on the river as well as one easterly on the cove. This fact did not lessen their rights in the waters of the cove or in the flats over which they flowed. It is unnecessary to determine how far or for what purposes the plaintiffs could have ex-tended their lands by filling in. It is enough to support the judgment that they had any right of this nature at all. The defendant, by filling up the flats immediately contiguous to the plaintiffs' land, has gone outside of any lines of wharf-age, the benefit of which he could claim on any possible theory of riparian right. His northerly line certainly could not be pushed out without regard to the tongue of land be-longing to the plaintiffs which was interposed between his land and the channel of the river. If it was necessarily a straight line, it could not be run north of one connecting the northwest corner of his premises with the point of the tongue. If it should have been a curved line, so far conforming to the interior configuration of the cove as to allow the plain-tiffs also to fill in to a continuation of it, it would have been also removed from the upland which belongs to them. Further than this we express no opinion as to the proper limits of the wharfage right of either party.

That that of the plaintiffs had never been exercised, did not impair or abridge it. It was in its nature a continuing one to be put to use at their own convenience, as and when their interests might require. For any act which directly tended to obstruct its full enjoyment, whenever, in the future, they might see fit to exercise it, they were entitled to bring immediate suit. An action in the nature of ejectment will also lie by a riparian proprietor to recover possession of what had been unreclaimed tide-water flats adjacent to his land, upon which the owner of the adjoining land has wrongfully, though under a claim of right, constructed a wharf. *Nichols* v. *Lewis*, 15 Conn. 137, 143; *Ladies' Seamen's Friend Society* v. *Halstead*, 58 id. 145, 152. In such a case, the wharf, as soon as it is built, becomes by accretion the property of him who alone had the right to build it; the flats upon which the filling rests being turned into real estate, the title to which follows the franchise.

These principles were correctly applied by the Superior Court to the case at bar. The defendant, by filling up the flats immediately adjacent to the plaintiffs' upland, which were the subject of their riparian rights and franchise, converted the shore of the river within the cove, north of a line connecting the point of the tongue at its entrance with the northwest corner of his own upland, into real estate. He thus did what only the plaintiffs could lawfully do, and the land so made became an accession to their land, precisely as if they had made it.

We have no occasion to inquire whether they had a right to claim a mandatory injunction to prevent him from continuing to maintain his filling on these flats, for they do not complain of the denial of an equitable remedy. The substantial point in controversy was whether they had a riparian franchise or other rights with respect to their tide-water frontage upon the cove, which the defendant violated; and as to this, the decision of the court below is supported by a long series of judicial precedents.

Each party had a certain right to reclaim the flats which adjoined his premises. It was one to be exercised with due

regard to the like rights held by others. Its limits were to be determined by the simple rule, *sic utere tuo, ut alienum non laedas. Simons* v. *French,* 25 Conn. 346, 354; *State* v. *Sargent & Co.,* 45 id. 358, 375; *Morris* v. *Beardsley,* 54 id. 338, 341; *Lowndes* v. *Wicks,* 69 id. 15, 29. This unerring test of human conduct forbade the defendant, on the strength of his ownership of the land opposite to the mouth of the cove and the channel of the river, to fill out to that channel in such a way as to blot the whole cove out of existence. It also precluded his gaining title by reclamation to the shore immediately contiguous to the plaintiffs' land.

It is unnecessary to determine whether anything which he did was justified by his franchise. Everything which he did certainly was not, and it is enough to sustain the judgment appealed from that the plaintiffs had any riparian rights, either in the shore or in the water of the cove, for these were necessarily invaded by the defendant's filling up to high-water mark against their land, and neither party complains of the amount of the damages assessed against him.

There is no error.

In this opinion the other judges concurred.