THE TOWN OF ORANGE *vs.* ISADORE W. RESNICK.

*First Judicial District, Hartford, March Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

An owner of upland adjoining tide-water may lawfully erect a bathing pavilion with its appurtenances upon the shore in front of his premises between high and low-water mark, provided the structure does not interfere with navigation.    Such use of the shore is nothing more than a proper use of the upland owner's riparian franchise, and is a property right of which he cannot be deprived, even for a public purpose, without the payment of just compensation.   Accordingly, an Act of the legislature (16 Special Laws, p. 1102) which purports to authorize a town to fill in the shore between high and low-water mark and improve the same as a public park, or in any other way to extinguish the riparian rights of an adjoining upland owner, without just compensation therefor, is to that extent inoperative.   Nor can the town by injunction restrain any proper exercise of such owner's riparian rights, without first condemning them.

In this State the only substantial public right which is superior to the rights of the riparian owner, is the right to the free and unobstructed use of navigable waters for navigation.

Although all tide-waters are prima facie navigable, whether they are so or not in reality is a question of fact.   Much of our shore bordering on Long Island Sound consists of tidal flats quite useless for navigation, which have long been occupied in many places for manufacturing and commercial purposes.

Argued March 4th—decided April 17th, 1920.

SUIT to restrain the defendant from erecting bathing pavilions or other structures between high and low-water mark in front of his upland adjoining land of the plaintiff used as a public park, brought to the Superior Court in New Haven County where a demurrer to the first count of the complaint was sustained (*Greene, J.*) and, upon the withdrawal of the other counts, judgment was rendered for the defendant, from which the plaintiff appealed. *No error.*

*Transferred from third judicial district.

The first count of the complaint alleges that by a Special Act of the General Assembly approved June 6th, 1913 (16 Special Laws, p. 1102), the State conveyed to the Town of Orange all its right, title and interest in certain lands lying between high and low-water mark, with authority to the Savin Rock Park Commission, created for that purpose, to develop and improve the same as a public park. It is alleged that the town has complied with all the requirements of the Act and is engaged in improving the land as a public park. The defendant is described as claiming to own certain upland bordering on the shore so granted to the plaintiff town by the State, and it is alleged that he is constructing a bathing pavilion in front of his upland stretching over and across the shore between high and low-water mark, which bathing pavilion will, if constructed and maintained, greatly lessen or destroy the availability of the plaintiff's land for park purposes, and prevent the plaintiff from carrying the Act of 1913 into effect. The other counts of the complaint have been withdrawn.

The defendant demurred to the first count, on the ground that the Act of 1913 is unconstitutional and in violation of the State and Federal constitutions, in that it attempts to deprive the defendant of his property without due process of law; on the ground that the town was attempting by this complaint to take the defendant's property for a public use without paying compensation therefor; and on the ground that the State had no right to cede to the Town of Orange the defendant's riparian rights without payment of compensation. The trial court sustained the demurrer on the grounds above stated. Judgment was entered for the defendant, and the plaintiff appeals.

*Charles F. Roberts* and *Claude B. Maxfield*, for the appellant (plaintiff).

*Arthur B. O'Keefe*, for the appellee (defendant).

BEACH, J.   The first section of the Act in question authorizes the Town of Orange, acting by the Savin Rock Park Commission, to construct and maintain a seawall along the line of mean low-water in Long Island Sound, from a point on low-water mark opposite Bradley's Point to the New Haven line, and to fill in and grade the space lying between high and low-water mark.   The State releases to the Town of Orange all the right, title and interest of the State in and to any of the described land lying between high and low-water mark, provided that no part thereof shall· be sold without authority from the General Assembly, and that said land shall be held, used, developed and improved in the manner provided by the Act as a public park open to all persons without restriction, except such rules and regulations as may reasonably be imposed by the Commission.   It is further provided that if at the end of five years fair and reasonable progress in the development of the land as a park has not been made, the title shall revert to the State.

Section 2 authorizes the town to borrow money for the development of the park, and annexes the described premises to the Town of Orange.

Section 3 creates the Savin Rock Park Commission and provides for its organization.

Section 4 prescribes the powers and duties of the Commission, some of which are as follows: generally to have charge of the construction of the park, to make contracts for that purpose, to make rules for the use of the park by the public, and to erect buildings thereon and rent them for not more than five years.

The only provisions looking to condemnation proceedings are those in § 2, as follows: "Said town of Orange may acquire, by gift, purchase, or condemnation,

any tract of land or property lying adjacent to the land hereby conveyed, and said land or property shall be a part of the land subject to the provisions of this act. If said town cannot obtain the land or property adjacent to that hereby released by agreement with the owner it may take the same in the manner provided by law for taking land for a public square, common, or park."

This language on its face refers only to land lying outside of the premises conveyed, and in that respect it is consistent with the whole context of the Act, which seems to assume that the town may fill in the shore and make it into a park without the necessity of condemning any riparian rights within the limits of the land conveyed by the Act. There is also a provision, in § 4, authorizing the Commission, in the name of the town, to prosecute any action for taking any land or property "in the manner hereinbefore provided"; and we think this also was intended to apply to land or property lying adjacent to the land conveyed by the Act.

The complaint follows the terms of the Act, alleges a finding of fair and reasonable progress by a judge of the Superior Court, that the plaintiff town is now holding the land, and that the Commission "is developing and improving said land for the purposes of a public park as by said Act provided." Having alleged title and possession of the premises in dispute, the complaint describes the defendant as claiming to own a certain piece of upland bounded on tide-water, together with all riparian rights connected therewith, and alleges that the defendant is constructing a bathing pavilion extending from his upland and "stretching over and across the land of the plaintiff," and claims, as the sole reason for injunctive relief, that the construction and maintenance of the defendant's bathing pavilion will diminish the value of the premises

as a site for a public park, and hinder or prevent the town from carrying the Act into effect.

It will be seen that the plaintiff's brief is quite correct in saying that this is not a condemnation proceeding but an attempt "to restrain an encroachment by the defendant on the land of the town." In other words, the complaint, consistently with the Act, assumes that the Act has given the town whatever title is necessary to enable it to occupy the shore and convert it into a park.

The plaintiff's brief claims that the real issue presented by the complaint and demurrer is whether the defendant's structure is a legal exercise of any riparian right, or whether it is a nuisance and a purpresture because not erected in aid of navigation. It is doubtful whether the complaint presents this issue for determination. It contains no allegations suggesting that the defendant's bathing pavilion is a purpresture, but is framed on the theory of restraining an encroachment on the land of the town, not because it obstructs navigation, but because it interferes with the development of the park. Besides, the plaintiff being avowedly engaged in converting the shore into dry land for a park, is hardly in a position to pose before a court of equity as the champion of the public right of navigation. But since the right of a riparian owner to construct, between high and low-water marks, a bathing pavilion not alleged to obstruct navigation, is no longer questionable in this State, there is no reason why we should not restate the effect of our decisions on this point.

The count based on § 3080 of the General Statutes has been withdrawn. The second ground of the demurrer is to the effect that it appears from the complaint that the town is seeking to take the defendant's riparian rights for a public use without the payment of just compensation; and we think the complaint is open to that interpretation.

There are, then, two questions: First, is the defendant's bathing pavilion a lawful exercise of his riparian franchise? Second, are riparian rights in the soil between high and low-water marks property which cannot be taken for a public use without the payment of just compensation therefor?

As to the first question: The statement may be found in many reported cases that riparian rights must be exercised in subordination to the paramount rights of the public; but this generality is qualified by the fact that not all the public rights so-called in the shore below high-water mark are superior to the rights of the riparian owner. The public rights of fishing, boating, hunting, bathing, taking shellfish, gathering seaweed, cutting sedge and of passing and repassing, are necessarily extinguished, *pro tanto*, by any exclusive occupation of the soil below high-water mark on the part of a riparian owner. The only substantial paramount public right is the right to the free and unobstructed use of navigable waters for navigation. What waters are navigable is a question of fact. All tidewater is prima facie navigable, but it is not necessarily so. *Wethersfield* v. *Humphrey*, 20 Conn. 218, 227. There is no allegation in this complaint that the defendant's bathing pavilion does obstruct navigation, and the real question is whether a structure described as "a bathing pavilion with its appurtenances" is, by force of that description, a purpresture, when located between high and low-water marks.

In this State it is too late to make such a claim. The first case in which the question arose in this court was *East Haven* v. *Hemingway*, 7 Conn. 186, where the right of the riparian owner to maintain a "wharf and store standing thereon" was involved. Hosmer, C. J., stated the issue as to this point as follows: "The defendants are bounded on Dragon River at high-water mark;

and they claim that they have a legal right to occupy the shore in front of their land and for commercial purposes to erect buildings on it. Whether this position is correct, is the only remaining question in the case." And in upholding this position he says: "The right of individuals to use the soil of the shore, subject to the paramount rights of the public, so far as my information extends, has never, until now, been disputed." It may be that our law as to the private rights of riparian owners is more liberal than that of some other jurisdictions. If so, it is probably due to the conformation of our shore bordering on Long Island Sound, which, in its sheltered parts, consists largely of tidal flats, quite useless for navigation, and in many places long occupied for manufacturing and commercial purposes. At any rate, the rule adopted in *East Haven* v. *Hemingway,* 7 Conn. 186, has been consistently followed. "Adjoining proprietors have the right to the shore subject to the paramount right of the public. The usage of owners of land to high-water mark to wharf out against their own land, has never been disputed. The interests of navigation have been subserved; and the consequences have been altogether salutary. On the death of the owner to high-water mark, his estate in the shore and the erections upon it has descended to his heirs. This is our common law, founded on immemorial usage." *Chapman* v. *Kimball,* 9 Conn. 38, 41. "It has been adjudged in many cases that the owner of the soil may do such acts upon his own land, within the limits of a highway as do not interfere with the public easement. . . . And there is abundant authority that the owner of land along the seashore may do in like manner with his soil covered by the sea, if navigation is not thereby incommoded." *Burrows* v. *Gallup,* 32 Conn. 493, 500. "The owner of the adjoining uplands has the exclu-

sive privilege of wharfing and erecting stores and piers over and upon such soil and of using it for any purpose which does not interfere with navigation, and it may be conveyed separately from the adjoining uplands." *Far-ist Steel Co.* v. *Bridgeport*, 60 Conn. 278, 283, 22 Atl. 561.

It must follow that a bathing pavilion which does not obstruct navigation may lawfully be erected between high and low-water mark by the owner of the adjoining upland. In some places the privilege of developing the shore as a bathing beach may constitute a large part of the value of the adjoining upland, and when this is done without obstruction to navigation it is a legitimate use of the owner's advantages. "It is . . . the common law right of all Her Majesty's subjects to fish and boat, and bathe, in the open sea, and those who have land stretching down to the shore have facilities for enjoying all those rights which others differently circumstanced have not, and they necessarily use their land . . . to avail themselves of those advantages." *Falls* v. *Belfast & B. Ry. Co.*, 12 Ir. L. R. 233, 267.

As to the second question: In this State it is settled that the ownership of upland bounded on tide-water carries with it such an interest in the adjoining soil between high and low-water marks, as will enable the owner of the upland to maintain ejectment against one who wrongfully occupies it by an embankment or a wharf. In such a case we said: "Now, although the State prima facie is owner of the shore on a sea-coast, yet, we think, that . . . it cannot be maintained that the freehold is not in the hands of the proprietor. The law which permits him to build a wharf there, not injurious to the public interest, surely does not consider him as without interest in the soil." *Nichols* v. *Lewis*, 15 Conn. 137, 143; *Ladies' Seamen's Friend Society* v. *Halstead*, 58 Conn. 144, 152, 19 Atl. 658.

This interest in the soil below high-water mark may be conveyed separately from the upland, either before or after the upland owner has occupied any part of it. *Ladies' Seamen's Friend Society* v. *Halstead, supra; Farist Steel Co.* v. *Bridgeport, supra.* Such a separable and assignable interest in the soil is evidently a species of property, and it has been expressly held that the "exclusive right to the soil between high and low-water mark for the purpose of erecting wharves and stores thereon," is "property in the nature of realty—is in fact real estate." *Ladies' Seamen's Friend Society* v. *Halstead, supra.* And in the very recent case of *Barri* v. *Schwarz Bros. Co.*, 93 Conn. 501, 107 Atl. 3, in holding that an action might be brought under § 5113 of the General Statutes to settle the title to unreclaimed land under water, we said that the riparian rights of the owner of adjoining upland "clearly constitute interests in property." This being so, it must follow that the taking of the soil between high and low-water mark for the purpose of converting it into dry land for use as a public park, is, as against abutting riparian owners, a taking of private property for a public use.

It was suggested in argument, on the supposed authority of a passage from Farnham on Waters, that the only substantive right of a riparian owner was the right of access to the sea; that the so-called right of wharfage was a mere privilege which the State might take away; and that the interposition of a public park between the upland and the sea would not deprive the defendant of his right of access thereto. The only point in this suggestion which has not been sufficiently discussed, relates to the right of access to the sea. It is hardly necessary to say that this right of the riparian owner is something more than the right, common to all the public, to reach the water front by crossing a public park. The sea is a highway,

and the riparian owner's right of access to navigable water is somewhat analogous to the right of the owner of roadside property to have access to the highway. "The right of the owner of a private wharf, or of a roadside property, to have access thereto, is a totally different right from the public right of passing and re-passing along the highway or the river." *Lyon* v. *Fishmongers Co.,* L. R. 1 App. Cas. 662, 675. "Every owner of land bounded on tide-water has a right to use this water for access to his land." *Ockerhausen* v. *Tyson,* 71 Conn. 31, 36, 40 Atl. 1041. The right of access has been properly described as "the fundamental riparian right—on which all others depend, and which often constitutes the principal value of the land." *Lamprey* v. *Siate,* 52 Minn. 181, 197, 53 N. W. 1139. Thus the exclusive franchise of reclamation and of wharfing out is merely a mode of exercising the right of access, and in this State at least no distinction can be drawn between them.

It does not necessarily follow that the Act of 1913 is unconstitutional. In and of itself it is inoperative in so far as it purports to authorize the town to fill in the shore between high and low-water marks, or in any other way to extinguish the riparian rights of an adjoining upland owner. Nor can the town by injunction restrain any proper exercise of such riparian rights, without condemning them. It may have power to condemn the riparian rights on this shore under §§ 5185, 5186. If so, the town, on complying with these statutes, will be in a position to carry the Act of 1913 into effect.

The demurrer is sustained on the grounds stated in paragraph two thereof.

There is no error.

In this opinion the other judges concurred.