## STATE OF CONNECTICUT
### vs.
## KNOWLES-LOMBARD COMPANY
(Transferred from Hartford Superior Court)

Superior Court     New Haven County     File #46623

Present: Hon. ARTHUR F. ELLS, Judge.

Harry L. Brooks,
Assistant Attorney General, Attorney for the Plaintiff.

O'Keefe & French;
Charles A. Pelton,        Attorneys for the Defendant.

**MEMORANDUM FILED JULY 2, 1936.**

ELLS, J. The issue here involved is the ownership of sand between ordinary high and low water marks. The defendant is the owner of land bounded by Long Island Sound at Madison; is engaged in the business of selling sand and bird gravel; has been taking large quantities of both from the beach between high and low water marks and selling it for commercial purposes; the State of Connecticut is here seeking to enjoin it from so doing, on the ground that title and ownership is in the State of Connecticut as trustee for the public.

That actual title is in the State can hardly be doubted. In the case of **East Haven vs. Hemingway, 7 Conn. 186,** which discusses the competency of Charles II to convey land to the Colony of Connecticut, it was held that the title of the king to the soil between high and low water marks has long been established law. Quoting Swift the Court says "By this expression I do not understand that the proprietors alluded to were seized, but that they had a right of occupation, properly termed a "franchise". The case is equivocal, however, for it holds "the right of soil is in the upland owner". The point decided is that the upland owner "has an exclusive right to the soil between high and low water mark for the purpose of erecting wharves and stores thereon". This is our settled law.

In **Chapman vs. Kimball, 9 Conn. 38, 40,** we find direct statement that the soil between high and low water marks is owned by the State. Earlier "misleading statements" are discussed. **In Simons vs. French, 25 Conn. 346, 351,** it is held that in Connecticut it is now settled that the public is the owner in fee up to high water mark.

In the leading case of **Mather vs. Chapman, 40 Conn. 382, 395,** it is said that by the settled law of Connecticut this title of the upland owner terminates at high water mark, but that he has certain privileges in the adjoining water. The case involved the exclusive right of the upland owner to sea weed and held he had it above high water mark, "but below high water mark the soil does not belong to the owner of the upland" and that sea weed cast thereon belongs to the public.

Beginning with **Farist Steel Co. vs. Bridgeport, 60 Conn. 278** we have a line of cases which distinctly recognize the title to be in the State but that the "franchise" of the upland owner, that is the right to occupy the soil for certain purposes, is a valuable right of which the State cannot deprive him without fair compensation.

It is quite clear from this review of our authorities that title to the sand, rock, or soil between ordinary high and low water marks is in the State of Connecticut, but that the upland proprietor has certain valuable rights, privileges and franchises to occupy and use the soil. Principal among these are the right to wharf out, the right of access to the water, the right of accretion and reclamation. If title to the soil is in the State, and the upland owner's interests in the soil are confined to a proper use of it, it would seem obvious that he cannot remove, carry away, and sell all the sand. Title to soil means primary ownership,—how can another, who has merely limited rights of occupancy and use, take away the soil belonging to another? That right to use land for certain purposes does not mean the right to carry it away and sell it.

Counsel for the defendant claims that the State's title is not really in fee, that it is not an absolute title, but that it is in essence a franchise or privilege to use the land solely for navigation, and that the upland owner has absolute title except in cases where the exercise of such right actually interferes with or obstructs navigation. All the cases put it just the opposite way—title is in the State; the "franchise" is in he upland owner.

But powerful aid is given the defendant's contention by the case of **Orange vs. Resnick, 94 Conn. 573.** If certain sen' tences are isolated from their context, and from all our earlier cases, then the upland owner's contention is established. The

troublesome statement made in that case is—"In this State the only substantial public right which is superior to the rights of the riparian owner, is the right to free and unobstructed use of navigable waters for navigation". If I shut my eyes to the point decided by this case and to all which has gone before in our decisions, I must decide for the defendant. But the decision itself is entirely in harmony with all our decisions, and merely holds that the erection of a bathing pavilion on the disputed land is a lawful exercise of the upland owner's riparian rights and that this franchise cannot be taken away by the State without compensation. The upland owner has certain exclusive rights to this soil; he has an assignable interest to it; it is a species of property; it is in the nature of realty,—such are the statements to be found in this case:—but nowhere does it say that the upland owner actually owns the soil itself.

The question at issue in this case is clearly distinguishable from the much mooted one as to the rights of the public to walk over or bathe on the beach between high and low water mark,—using an access to it from boats or from adjoining property. The Massachusetts Court has held that there is no right in the public to use for bathing purposes the part of the beach above low water mark. It is held that according to the Colonial ordinance, "in the seashore the entire property is in the individual subject to the public rights". It would follow that the public would have no right to trespass on private property to bathe in public waters. But, as is stated in **Farnham vs. Waters,** if the title to the shore is in the public, anyone may resort there for the purpose of bathing, providing he can reach the shore without trespassing on private property. The differing views as to title are stated by the United States Supreme Court in **Shively vs. Bowlby, 152 U. S.,** where, at page 20, the Court says "In Connecticut also the title in the land below high water mark is in the State. But by ancient usage, without any early legislation, the proprietor of the upland has the sole right, in the nature of a franchise, to wharf out and occupy the flats". In Rhode Island title is in the State. In Massachusetts, by virtue of the Colonial ordinance, it is in the upper proprietor.

Even though in Connecticut the title is in the State, the question as to the right to bathe might be ultimately decided on the basis of an exclusive right of occupancy, as part of

the franchise which the upland owner has in the beach. But that is a different question from the one raised by this case. Here the soil itself is being taken by the upland owner. No question of franchise or occupancy is involved. This defendant is taking away the beach itself. Unless and until our Court reverses itself and declares title to be in the upland owner, subject to certain public rights, it would seem that he could not rightfully take away that in which he has no ownership. If he has no right to seaweed cast upon the disputed territory, can it be that he may take away the underlying sand, which also was cast there by the sea? The gathering of seaweed might even be held to be a part of his franchise (our law is to the contrary), but how could the soil itself be so considered? The State has title to the beach. What is the beach? Sand. It therefore has title to the sand.

Connecticut law is liberal to the upland owner. Because of the nature of our coast, with its innumerable flats, generous provision is made as to occupancy by him. But this is a real sand beach, directly on the real shores of the Sound, and our law says the title is in the State.

The defendant is therefore enjoined from taking sand and gravel between ordinary high and low water mark, for the purpose of using or selling it for commercial purposes. The judgment will contain provisions to that effect.